```
1              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
2                       ATHENS DIVISION

3            _____


4    THE UNITED STATES OF AMERICA   :    3:20-cr-44-CAR

5              VS.                   :    October 23, 2020

6    MARQUET ANTWAIN BURGESS MATTOX :    Macon, Georgia
                        Defendant
7    _____


8


9            TRANSCRIPT OF FARETTA INQUIRY HEARING
             BEFORE THE HONORABLE CHARLES H. WEIGLE,
10            UNITED STATES COURT MAGISTRATE JUDGE


11


12   APPEARANCES:


13   FOR THE GOVERNMENT:      LYNDIE FREEMAN
                              UNITED STATES ATTORNEY'S OFFICE
14                            P. O. BOX 1702
                              MACON, GA 31202-1702

15


16   FOR THE DEFENDANT:       PRO SE


17


18   STANDBY COUNSEL:         JARED WESTBROEK
                              FEDERAL DEFENDERS OF MDGA
19                            440 MLK JR BLVD STE 400
                              MACON, GA 31201

20


21


22   _____


23                    TAMMY W. DIROCCO, USCR
                           P.O. BOX 539
24                     MACON, GA 31202-0539
                         (478-752-3497)

25
```

1  October 23, 2020

2  10:30 a.m.

3  Macon, Georgia

4                    P R O C E E D I N G S

5          CSO OFFICER:  All rise.  The United States District

6  Court for the Middle District of Georgia, Macon Division is

7  now in session.  The Honorable Charles Weigle United States

8  Magistrate Judge presiding.

9          Please be seated and come to order.

10         THE COURT:  Today is October 23rd, 2020 and we are

11  here in case 3:20-cr-44 in the matter of United States versus

12  Marquet Antwain Burgess Mattox for purposes of a hearing

13  pursuant to *Faretta versus California* to determine whether the

14  Defendant intends to proceed representing himself and to go

15  through the inquiry to make sure that that is appropriate in

16  this case.

17         So let me ask the Defendant, first, is it still your

18  intention to proceed representing yourself in this case?

19         THE DEFENDANT:  Will you allow me to say something

20  before I answer that question, please.

21         THE COURT:  Go ahead.

22         THE DEFENDANT:  I would like to humbly apologize to

23  you and apologize to the court for disrupting the court.  And

24  again I apologize to you and I wish to purge my contempt.

25         THE COURT:  We are done with the contempt.  I

1   definitely -- you are not in contempt anymore.  That was dealt

2   with on Friday.  So that is taken care of and I understand and

3   I appreciate your apology.

4           THE DEFENDANT:  Is it okay for me to have my -- I

5   know there are some documents that you want from me.  Is it

6   okay for me to have my right hand free so I can pass the

7   documents, in addition to writing.

8           THE COURT:  That's fine with me, yeah.

9           THE DEFENDANT:  And to answer your question, yes.

10          THE COURT:  Very good.  I know I appointed the

11  Federal Defenders to be available to you as standby counsel.

12  Have you had any discussions with the federal defenders or

13  with Mr. Westbroek about your interest in this case?

14          THE DEFENDANT:  I have not spoken with

15  Mr. Westbroek.

16          THE COURT:  Well, let me explain what we're here to

17  do.  And, of course, I've given you that document I gave you

18  to look over and I want to go through some of that material

19  here on the record today.

20          Essentially, as we discussed at the initial

21  appearance, any defendant does have the right to be

22  represented by an attorney in their trial and for all the

23  proceedings in the case, and that does include the right to

24  have appointed counsel.

25          And I had initially decided you were eligible for

1  appointed counsel so I asked the Federal Defenders Office to

2  appear with you.

3          Now you also have the right -- a defendant has the

4  right to represent himself in court.  That right is subject to

5  some other issues and we want to go through that.

6          First of all, I just need to make sure that you're

7  making this decision with your eyes wide open and understand

8  the disadvantages of proceeding pro se.  And that's the

9  purposes of this inquiry is to just be clear on the record

10  that you understand your rights and that this decision is

11  being made understanding the consequences of the decision.

12          I know we went over it at the initial appearance but

13  Ms. Freeman would you just remind the Court for the record

14  what the sentencing ranges are for the charges that are

15  involved in this case.

16          MS. FREEMAN:  The Defendant is charged with nine

17  counts of wire fraud.  The statutory maximum sentence for wire

18  fraud is 20 years in prison.  The maximum fine is $250,000 per

19  count and maximum supervised release is three years.

20          He is also charged with ten counts of false claims

21  against the United States in violation of 18 U.S.C. 287.  The

22  maximum sentence for a violation of 287 is five years in

23  prison with a $250,000 fine per count and three years maximum

24  supervised release.

25          Count 20 he is charged with theft of United States

 1   government funds.  The maximum penalty for that is 10 years in

 2   prison, another $250,000 fine and three years of supervised

 3   release.

 4          THE COURT:  It's 20 counts in total, Ms. Freeman, is

 5   that right?

 6          MS. FREEMAN:  Yes, Your Honor.

 7          THE COURT:  I just want to confirm, as the

 8   government just outlined, you are charged in 20 counts in this

 9   indictment.

10          The first nine counts of wire fraud each would carry

11   a maximum term of 20 years incarceration and up to a $250,000

12   fine, along with a $100 mandatory assessment for each count.

13          The ten counts of false claims would each carry a

14   possible term of five years in prison and up to a $250,000

15   fine and $100 mandatory assessment for each count.

16          And, then, finally that theft of government funds

17   charge would carry a maximum term of 10 years and $250,000

18   fine, along with a mandatory assessment of $100.

19          Do you understand that those are the charges and the

20   possible sentencing ranges that go along with those charges?

21          THE DEFENDANT:  I wasn't aware of that until just

22   now.

23          THE COURT:  Well, we did discuss that back when we

24   were here two weeks ago.  But obviously there was a lot going

25   on.

1                Do you understand that if you are found guilty of

2        more than one of those charges that the Court could order the

3        sentences to be served consecutively.  That is one sentence

4        after another.

5                Do you understand that?

6                THE DEFENDANT:  But if I -- but there would be an

7        option as far as an appeal at some point if --

8                THE COURT:  Appeals are possible in a case, of

9        course.  But I just want to make sure you understand that all

10       of those sentences that the Court outlined, the sentencing

11       ranges, that they could be served consecutively.

12               Do you understand that?

13               THE DEFENDANT:  (Nodding affirmatively.)

14               THE COURT:  You need to say it out loud just so we

15       are clear.

16               THE DEFENDANT:  I'm understanding what you are

17       saying.

18               THE COURT:  Okay.  And have you ever heard of the

19       Federal Sentencing Guidelines?

20               THE DEFENDANT:  I have not.

21               THE COURT:  Well, there are sentencing guidelines

22       that have been mandated by Congress and they guide and advise

23       courts on how to sentence, depending on a verdict of guilty.

24       So I want to make sure you understand that.  The Court would

25       be guided by those guidelines in any sentence if you are found

1    guilty of any of these crimes.

2              THE DEFENDANT:  Okay.

3              THE COURT:  It's critical that you understand that

4    if you represent yourself you are on your own which means the

5    Court is not going to be able to give you legal advice.  You

6    will have to make your own decisions.

7              Do you understand that?

8              THE DEFENDANT:  I did go through the questionnaire

9    and I answered the questions as you instructed and I have

10   those prepared.

11             THE COURT:  Good.  I won't go through all of those

12   questions then, but I do want to go through some basic things

13   with you here in person just to make sure.  And we'll get that

14   form from you as well, that will be helpful.

15             So you have gone through that form and you've read

16   each one of those questions and you've checked off your answer

17   one way or the other on that form?

18             THE DEFENDANT:  I did.  Will you allow me to pass it

19   to you, please?

20             THE COURT:  Yes.  I will.  Thank you.

21             I notice you state that you did not understand the

22   charges against you or what the possible penalties are in case

23   you are found guilty of all those charges.  But we did just

24   discuss that.

25             Do you understand that now?

1            THE DEFENDANT:  We did just discuss that and I did

2    not have clarity prior.

3            THE COURT:  And, of course, you have a copy of the

4    indictment and we went over the indictment with you as to what

5    the specific facts of those charges are.  But you have that?

6            THE DEFENDANT:  Correct.

7            THE COURT:  I won't go through each one of the

8    questions you filled out on the form but I want to go through

9    some critical things.

10           I mentioned that if a defendant proceeds pro se the

11   defendant is on his own and can't have the Court provide legal

12   advice or assistance.

13           So let me just go through some of the specifics of

14   that.  Have you ever heard of the Federal Rules of Evidence?

15           THE DEFENDANT:  I have heard of it.

16           THE COURT:  Well, the Federal Rules of Evidence

17   govern what evidence is admissible in court and is not

18   admissible in court.  And if you proceed pro se you will be

19   required to abide by the rules of the Federal Rules of

20   Evidence.

21           Do you understand that?

22           THE DEFENDANT:  Yes.

23           THE COURT:  And they will not be relaxed for your

24   benefit.  The Court is not going to give you any breaks on

25   those rules because you are not a trained lawyer.

1              Do you understand that?

2              THE DEFENDANT:  I do.

3              THE COURT:  Have you ever heard of the Federal Rules

4    of Criminal Procedure?

5              THE DEFENDANT:  Not of criminal procedure.

6              THE COURT:  You've heard of the Federal Rules of

7    Civil Procedure?

8              THE DEFENDANT:  I've heard of it.

9              THE COURT:  Well, there are also Federal Rules of

10   Criminal Procedure.  They are similar.  They are not the same,

11   but they are in a similar vein.

12             And those Rules of Criminal Procedure will govern

13   the way the case is tried in federal court and you will be

14   bound by those rules as well as the Federal Rules of Evidence.

15             Do you understand that?

16             THE DEFENDANT:  I do.

17             THE COURT:  Well, I am obligated by the Faretta case

18   and other cases just to advise you that in my opinion a

19   trained lawyer would defend you far better than you could

20   defend yourself and it is unwise of you to try to represent

21   yourself.  You are not familiar with the law.  You are not

22   familiar with court procedure.  You are not familiar with the

23   Rules of Evidence.

24             Lawyers spend years and years training, learning

25   those rules, in addition to spending years and years in and

```
 1    out of court rooms, talking to judges, talking to juries and

 2    they have all the advantages of that training and experience

 3    that you do not have.

 4            So I have to strongly urge you not to try to

 5    represent yourself.  That it is almost always a mistake.

 6            But having given you my thoughts on that and the

 7    thoughts of courts in general, in light of the penalty that

 8    you might suffer if you are found guilty and it light of all

 9    the difficulties of representing yourself and the form you

10    have goes into some more details about things a lawyer can do

11    for you that you can't do for yourself.  And you have

12    obviously read that and gone through it and so I won't go

13    through each of those details.

14            In light of all the difficulties of representing

15    yourself do you still desire to represent yourself and to give

16    up your right to be represented by a lawyer?

17            THE DEFENDANT:  Now, if I'm giving up -- if I'm

18    waiving the right to be represented by an attorney today but

19    if I have questions in the future I think you are saying that

20    I wouldn't have the right or the opportunity to ask those

21    questions.  Is that correct?

22            THE COURT:  Well, I will probably continue to have

23    the Federal Defenders Office provide you with standby

24    counsel.

25            Let me say this, if you change your mind at any time
```

1  you can be represented by an attorney but it may -- the Court

2  is going to be unlikely to be granting you any extensions of

3  time if you wait until the last minute to decide you want a

4  lawyer.  You may have to go forward with that lawyer not

5  having had the chance to get prepared in the case.

6            So keep in mind that you can change your mind in

7  this case but it's not necessarily going to change the

8  schedule of the case or the trial or how the court proceeds.

9  You're not going to get any favors or special benefits because

10  you are proceeding representing yourself.

11            Does that make sense?

12            THE DEFENDANT:  It does make sense.  Can I ask a

13  question.

14            THE COURT:  Yes.

15            THE DEFENDANT:  Do you know the schedule?

16            THE COURT:  I do not.  Judge Royal will be setting

17  the schedule in this case.  I don't think he has scheduled a

18  pretrial conference yet.

19            Of course, my pretrial order, which I will get you a

20  copy of so you will have that, will outline what the schedule

21  is for pretrial discovery or any other motions that need to be

22  filed.

23            Did we give him a copy of the pretrial order?  I did

24  give you a copy of the pretrial order that explains the

25  schedule for pretrial matters.

1          But Judge Royal will be setting the schedule for the

2     trial or any other matters that have to be decided before

3     trial.

4          THE DEFENDANT:  Would I have the opportunity to

5     actually study, to prepare and study?

6          THE COURT:  You would have whatever opportunity you

7     have.  I mean, the fact that you are detained is going to make

8     it somewhat more difficult for you to do that.  And that's

9     something that is mentioned in this list of forms -- this list

10    of questions mentioning that some of the disadvantages of

11    representing yourself is that you may have limited access to

12    the U.S. Attorney and make it more difficult to communicate

13    and work out any kind of resolution for the case.

14         It may also make it somewhat more difficult for you

15    to engage in discovery and other matters given that you've

16    been detained in this case.

17         And, again, one of the consequences of self

18    representation is accepting some of those disadvantages.

19         THE DEFENDANT:  What are the possibilities of a bond

20    to have the opportunity to prepare and study?

21         THE COURT:  Well, at this point I have entered an

22    Order of Detention in the case and I don't have any reason to

23    reconsider that order.

24         THE DEFENDANT:  Can you repeat that first part,

25    please.

1         THE COURT:  I have entered an Order of Detention in

2    this case.  We had a detention hearing back two weeks ago and

3    I entered an Order of Detention and I have no reason to

4    reconsider that order.

5         And, again, you are bound by the statute, 18 U.S.C.

6    Section 3142 has some provisions about when the court and how

7    the court can reconsider an Order of Detention but none of

8    those circumstances appear today.

9         THE DEFENDANT:  I got the first part.  Enter the

10   Order of Detention hearing.  And there was another part.  I'm

11   writing as fast as you're speaking.

12         THE COURT:  Well, we're getting to the point now

13   where you're asking me for legal advice and I told you before

14   that you don't get free legal advice from the Court.  My job

15   is not to be your lawyer.  My job is to be the Judge.

16         If you want to talk to Mr. Westbroek and ask him

17   some of these questions you're welcome to do that.

18         THE DEFENDANT:  I'm only attempting to write as fast

19   as you're speaking.  I apologize if it sounds as if I'm asking

20   legal advice.  You said you entered an Order of Detention

21   hearing.

22         THE COURT:  I entered an Order of Detention after a

23   detention hearing two weeks ago.  That Order of Detention has

24   been entered and there is no reason to reconsider that order

25   today and I'm not going to reconsider that order today.

1           THE DEFENDANT:  Just one moment.  Your Honor, to

2   please the Court, I made a full conveyance to and for the

3   account of the United States to please the court and you have

4   that conveyance to and for the account of the United States

5   and making that full conveyance for the account of the United

6   States for discharge of all purposes of the obligation and the

7   person making the same and no person shall be held liable in

8   any court for anything done or omitted in good faith.

9           In making that conveyance to and for the United

10  States I think that, is it my understanding, that it please

11  the court?

12          THE COURT:  Is it your understanding that what?

13          THE DEFENDANT:  A full conveyance to and for the

14  account of the United States.  The conveyances of the true

15  bill.  Conveyances of the true bill having conveyed to and for

16  the account of the United States and making the conveyance to

17  and for the account of the United States should be a full

18  acquittance and discharge for all purposes of the obligation

19  and the person making the same.

20          I'm asking is it my understanding that that pleases

21  the court?

22          THE COURT:  That doesn't please me or not please me.

23  I'll tell you what it is.  It's nonsense.  And all that blah,

24  blah, blah about conveyance is utter nonsense.  We hear it in

25  court all the time.  We call it a sovereign citizen theory or

1    redemption theory and it's nonsense.  It's empty words.

2              And a lawyer would tell you that.  Any good lawyer

3    would tell you that all of this convey and assign and

4    whatever, it means nothing.  It's gibberish.  You can say it

5    all you want to but it's not going to change the way this

6    trial proceeds.

7              The trial is going to proceed according to the

8    Federal Rules of Evidence, Federal Rules of Criminal

9    Procedure, the laws and statutes of the United States as

10   interpreted by the Supreme Court in the Eleventh Circuit Court

11   of Appeals.  That's where you are.

12             THE DEFENDANT:  Your Honor --

13             THE COURT:  And I'm sorry if that hurts your

14   feelings, but you need to face reality.  This stuff is not

15   magic that's going to get you out of these charges.  It's just

16   nonsense.

17             THE DEFENDANT:  Your Honor, I am not a sovereign

18   citizen.  I'm not exactly sure -- I am an American Indian by

19   blood but I am not a sovereign citizen.  As far as what the

20   sovereign citizen -- I'm not a sovereign citizen.

21             And as far as reading, I know you said that as far

22   as sovereign citizen jargon, as far as reading that is

23   actually something that I actually read and I don't think it

24   was a sovereign citizen document.

25             THE COURT:  Well, whatever you read either you read

1   it wrong or it was not something worth reading.  That's all I
2   can tell you.
3          And that's why I say you are better off having a
4   lawyer who has read statutes and cases and laws and rules and
5   knows how they apply in a court of the United States.
6          Now, I will just say -- I have been doing this job
7   for a long time.  I do it every day.  And this stuff means
8   nothing to me.  It has no meaning.  I don't even know what it
9   means.  It's not the language we speak in this courtroom.
10         You got to understand when you come into court
11  you've got to speak the language of the court, that's the
12  Rules of Evidence, the Rules of Criminal Procedure, the law of
13  the statutes of the United States.  And a trained attorney
14  could help you do that.
15         THE DEFENDANT:  I was not aware -- the last hearing
16  I was not aware that that was a detention hearing.  I was
17  under the impression that that was for the contempt of court.
18         THE COURT:  Well, again if you had had a lawyer he
19  could have explained to you what was going on and I made it
20  pretty clear what was going on from the beginning.
21         Of course the first day you wouldn't listen to me.
22  I kept trying to explain to you what was going on and you kept
23  shutting me down and that's why we had the contempt.
24         And then we came back and had a detention hearing
25  and an arraignment on that Friday.  That's what that

1  proceeding was.  The contempt was over.

2          MS. FREEMAN:  Your Honor, for purposes of clarity of

3  the record, if the Defendant's questions just now was

4  construed to be a motion to reopen the issue of detention does

5  Your Honor have a ruling for that?

6          THE COURT:  Well, to the extent that are you moving

7  to reopen the detention hearing at this time?

8          THE DEFENDANT:  Yes, I would like to visit that.

9          THE COURT:  On what grounds?

10          THE DEFENDANT:  I would say on the grounds that I

11  wasn't completely aware that was an actual detention hearing.

12          THE COURT:  Well, I don't find that particularly

13  credible not only because I explained that both days.

14          But also you dealt with it as a detention hearing.

15  You had your friend here.  I can't remember his name, Mr. King

16  maybe, who spoke on your behalf and asked the Court to grant a

17  bond.  He offered to put up his own money on your behalf for a

18  bond.  That sounds like a bond hearing, doesn't it?  That's

19  exactly what that was.  And I considered those arguments.  You

20  had a chance to speak to me.  You apologized for your

21  behavior.  We went through all of that and I made my decision

22  based on what was presented there.

23          Is there any new information that you did not have

24  available to you at that time that you have to present here

25  today?

1          THE DEFENDANT:  On that Wednesday on the 7th I was

2   under the impression that we were reconvening or revisiting on

3   the 9th and I was under the impression that we were still

4   revisiting the same -- because of the interruptions on the 7th

5   I was under the impression that we were revisiting because of

6   the interruptions.  I wasn't aware that it had gone into a

7   different hearing until -- an arraignment hearing into a

8   detention hearing all in one.  I was still thinking that we

9   were still at the contempt of court.

10          THE COURT:  Well, that's because you weren't

11   listening.  Because I went over it multiple times.  And you

12   were not listening to me because you wanted to make your

13   points.  You know, you made your bed.

14          THE DEFENDANT:  Things were going a little fast.

15   Things were going a little fast.

16          THE COURT:  Well, to the extent that you're moving

17   to reopen the detention hearing at this time I find no basis

18   to do that and, therefore, I'll deny that motion.

19          Let's get back to the main question of today.  Is it

20   still your intention to proceed representing yourself in this

21   case?  Having gone through all the disadvantages and issues

22   that are involved in self representation, is it still your

23   intention to proceed representing yourself?

24          THE DEFENDANT:  At this time, yes.

25          THE COURT:  And is that decision entirely voluntary?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Well, I do find based on our discussion

3    that the Defendant has knowingly and voluntarily waived the

4    right to counsel and I will, therefore, permit the Defendant

5    to represent himself in this case.

6          Now, I have appointed the Federal Defenders Office

7    to provide you with standby counsel.  So if you change your

8    mind you can get in contact -- you have contact information

9    for Mr. Westbroek.  You can call him up and tell him that you

10   want to have a lawyer and you can let me know and we can

11   change that and you can have a lawyer.  But keep it mind that

12   you're not going to get any special benefits with regard to

13   time if you wait to the last minute to have a lawyer.  Your

14   lawyer may have to proceed based on the court's timeframe.

15         And one other thing I should remind you is also as

16   this form, that you signed and checked off, points out if you

17   are disruptive in court the Court can revoke your self

18   representation and order that you be represented by counsel.

19   Because this trial is going to go forward and it's going to go

20   forward with all of the dignity and orderliness that is

21   expected of a federal trial.  And if in court you start to

22   disrupt the Court can and will revoke your right to self

23   representation and order that you be represented regardless of

24   your will.

25         So you will have to keep in mind that representing

```
 1   yourself you're going to have to follow all the rules of the
 2   court, all the Rules of Evidence, the Rules of Civil
 3   Procedure, the rules of just basic decorum and civility and
 4   the failure to do so could result in revoking your rights of
 5   self representation.  So just keep that in mind as well.
 6            So I'm going to continue to have the Federal
 7   Defenders Office appointed as your standby counsel.  If you
 8   need to talk to them you've got their contact information.  If
 9   you change your mind you've got their contact information.
10   But the sooner you do that the better it's going to be for you
11   if you do want to be represented by an attorney.
12            The documents that you have given me I will have
13   those entered into the record.  I'm going to give those to the
14   clerk now so those will be on the record, as well as our
15   discussion here today.
16            Are there any other matters that we need to take up
17   in this hearing for the government?  Let me ask the government
18   first.
19            MS. FREEMAN:  Your Honor, with regards to the
20   service of detention and compliance with the standard pretrial
21   order we are preparing that currently, it is voluminous and
22   would need to be on a disk.  Our intention is, unless
23   Your Honor has a different instruction, is to serve that on
24   his standby counsel.  As the nature of printing it would
25   probably not be something physically feasible for someone in
```

1   detention to take custody of.

2        MR. WESTBROEK:  Judge, I think -- I'll be more than

3   happy to take service of an electronic copy.

4        THE COURT:  Can you get closer to a microphone.

5        MR. WESTBROEK:  I'm more than happy to take service

6   of the copy that the government is describing at this point.

7        However, that would require meeting with Mr. Mattox

8   and because he has decided to represent himself he is not

9   taking meetings with me at this time.  So I think it would

10  prevent Mr. Mattox from having the opportunity to review that

11  discovery.  So I think it has -- a copy has to go to

12  Mr. Mattox.

13       MS. FREEMAN:  Your Honor, we can serve the disk on

14  both parties.

15       THE COURT:  Well, let's begin with that.  I do want

16  any discovery that is provided to the Defendant to be provided

17  to standby counsel so that they will at least have an access

18  to it.

19       MR. WESTBROEK:  Yes, sir.

20       THE COURT:  So y'all serve the discovery as you are

21  able to do and we will deal with any issues that come up with

22  regard to that in the due course of whatever pretrial

23  proceedings are going on.

24       Anything else that the government needs to take up?

25       MS. FREEMAN:  No, Your Honor.  I believe we have

```
1    covered all the requirements of Faretta and as it is

2    interpreted by Fitzpatrick in the Eleventh Circuit.

3              THE COURT:  Anything from the defense?

4              THE DEFENDANT:  The actual Faretta form that you

5    have, if I'm not mistaken, the instructions said not to sign

6    until after.

7              THE COURT:  Okay, you didn't sign that.  Let me give

8    that back to you if you want to sign it.  I'm sorry.  I forgot

9    that.  Thank you for reminding me.

10             THE DEFENDANT:  (Signing Faretta document).

11             THE COURT:  Thank you.  I will note just for the

12   record that you have signed that form, the Faretta

13   notification form, that I give you here in my presence and I

14   witnessed that that is your signature on there.  And we, of

15   course, have gone over some of that on the record here as

16   well.  So I think we have covered everything and then some.

17             And I am sure at this point that this is your

18   decision and it is made with full knowledge of the

19   consequences and advantages and disadvantages that would be

20   involved.

21             So anything else from the defense before we

22   conclude?

23             THE DEFENDANT:  Not at this time.

24             THE COURT:  Very good.  That concludes our business

25   for this morning.  We will be in recess until 1:30 this
```

1    afternoon when we start our initial appearance calendar.

2              CSO OFFICER:  All rise.

3

4                    (Proceedings concluded at 11:08 a.m.)

5                         END OF RECORD

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3          I, Tammy W. DiRocco, Federal Official Court Reporter,

 4     in and for the United States District Court for the Middle

 5     District of Georgia, do hereby certify that pursuant to

 6     Section 753, Title 28, United States Code, that the foregoing

 7     is a true and correct transcript of the stenographically

 8     reported proceedings held in the above-entitled matter and

 9     that the transcript page format is in conformance with the

10     regulations of the Judicial Conference of the United States.

11

12                         Dated this 7th day of June, 2021

13

14                         Tammy W. DiRocco

15                         _____

16                         Tammy W. DiRocco CCR
                           Federal Official Court Reporter

17

18

19

20

21

22

23

24

25
```