```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF GEORGIA
 2                         ATHENS DIVISION

 3               _____

 4   THE UNITED STATES OF AMERICA    :    3:20-cr-44-CAR

 5          VS.                       :    June 3, 2021

 6   MARQUET ANTWAIN BURGESS MATTOX :    Athens, Georgia
                          Defendant
 7   _____

 8

 9       TRANSCRIPT OF MOTION TO REVIEW DETENTION ORDER STATUS
                 BEFORE THE HONORABLE C. ASHLEY ROYAL
10                UNITED STATES COURT DISTRICT JUDGE

11

12   APPEARANCES:

13   FOR THE GOVERNMENT:       LYNDIE FREEMAN, AUSA
                               UNITED STATES ATTORNEY'S OFFICE
14                             P. O. BOX 1702
                               MACON, GA 31202-1702
15

16   FOR THE DEFENDANT:        PRO SE

17

18   STANDBY COUNSEL:          CATHERINE WILLIAMS
                               FEDERAL DEFENDERS OF MD GA
19                             440 MLK JR BLVD STE 400
                               MACON, GA 31201
20

21   _____

22                  TAMMY W. DiROCCO, USCR
                          P.O. BOX 539
23                   MACON, GA 31202-0539
                         (478-752-3497)
24

25
```

1    June 3, 2021

2    10:20 a.m.

3    Athens, Georgia

4                    P R O C E E D I N G S

5            THE COURT:  Mr. Mattox, are you ready to proceed

6    today?

7            THE DEFENDANT:  Good morning, Your Honor.  Yes.

8            THE COURT:  Now, my first question is, do you want

9    to continue to represent yourself?

10           THE DEFENDANT:  (No response).

11           THE COURT:  Standby counsel, Ms. Williams, is in the

12   courtroom but she is not going to participate in these

13   proceedings unless you want her to represent you or at some

14   stage if you want to ask her a question that is fine.

15           But you have told me and Judge Weigle that you want

16   to represent yourself.  You have a right to do that.

17           I have read the -- actually it's a draft, but a very

18   good draft of -- the Faretta hearing before Judge Weigle.  He

19   informed you thoroughly of the problems that you have in

20   representing yourself and how it is not wise because of the

21   complexity of all the issues that you have to deal with in a

22   court of law and this is a complicated case that the

23   government has filed against you.

24           But he explained all that to you and in more detail.

25   I agree with what he told you.

1           I'm going to make available to you that hearing

2    transcript when it is put in final form.  You should have the

3    transcripts of the three other hearings.  Two other hearings

4    before Judge Weigle and then the one before me which was last

5    month.  So you should have received those this morning.

6           THE DEFENDANT:  Yes, sir, Your Honor.

7           THE COURT:  So my question to you is; do you still

8    want to represent yourself in this case?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Okay.  And you understand the peril of

11   going forward on your own, correct?

12          THE DEFENDANT:  (No response).

13          THE COURT:  And if you don't, when you get the

14   transcript, then you can read the transcript again.  But I'm

15   happy to tell you the dangers of proceeding and I have already

16   outline, very briefly, that any way.

17          THE DEFENDANT:  Thank you.

18          THE COURT:  So if, at any point, you feel like you

19   want to talk to Ms. Williams just let me know and she'll try

20   to give you the answer.  But otherwise she's not going to

21   participate in the hearing today.  And.

22          She will -- the way I plan to handle this is we're

23   going to have a trial the week of August 7th and I plan for

24   her to be here.  But she will be in the gallery back there and

25   it won't look like she is an attorney representing you.  And

```
1   you will be on your own, as long as you conduct yourself in a

2   fashion consistent with the requirements of the decorum of

3   being in federal court.

4            Do you understand all that?

5            THE DEFENDANT:  Yes, sir, Your Honor.

6            THE COURT:  Why don't you pull your mask down.  I

7   want to make sure -- there you go.  That's much better.

8            Now, I'm going to use the opportunity today to deal

9   with certain issues.  I'm going to give you the opportunity to

10  address the Court in certain matters.

11           But you had a detention hearing before Judge Weigle

12  and Judge Weigle determined that you should be detained.  And

13  I have read those proceedings.  I understand what happened.  I

14  understand the basis of his ruling and why he thought you

15  needed to be detained.

16           I read the testimony of -- was it Taylor?  What was

17  the witness's name who appeared --

18           THE DEFENDANT:  Sam Taylor, Your Honor.

19           THE COURT:  Taylor, right.  I reviewed Mr. Taylor's

20  testimony.  I understand his relationship to you.  I

21  understand what he said and why he thought that you were not a

22  risk.

23           And I understand also, as I said just a minute ago,

24  what Judge Weigle said about you being detained.

25           Now, I think it was maybe the third hearing that you
```

asked him to revisit that detention order and he did not agree

to reconsider it.  And then I think you filed a motion for me

to consider it.  Is that correct?  Is that where we are today?

THE DEFENDANT:  If I'm not mistaken, Your Honor, he

mentioned that a motion would need to be filed in order for it

to be considered.

THE COURT:  Oh, I thought there was a motion filed

back in October.

Well, I'm here today to consider your objection to

the order of detention.  And so that's one of the things that

we're going to accomplish today.

And we talked about that -- I think we talked about

that at the hearing last month in my court.

THE DEFENDANT:  Yes, sir.

THE COURT:  So what would you like to say about your

detention.

THE DEFENDANT:  Your Honor, is it possible for me to

have my right hand so I can write and take notes, please.

THE COURT:  Well, the United States Marshals Service

does not like for prisoners to have their hands unshackled.

That has been brought to my attention.

They are in charge of the safety of this courtroom,

the people in this courtroom, you, the court staff, me, and

it's very rare when I don't accept what they recommend.

And I will tell you that one of the reasons that you

1    have copies of these hearings is because of the limitations of

2    being able to take notes.  And we can proceed slowly through

3    this hearing to give you the opportunity to write whatever you

4    need to write.  But I'm going to make all the transcripts

5    available to you.

6              So you will have a transcript of today's hearing.

7    You will have a transcript of the third hearing before Judge

8    Weigle.  So you will have at least five transcripts and

9    probably fairly soon.

10             THE DEFENDANT:  Thank you, Your Honor.

11             THE COURT:  All right.

12             THE DEFENDANT:  Your Honor, if possible, I would

13   like to start to mention, Your Honor, private trust documents

14   were delivered to the court on October 23rd that go along

15   with the motion.  And, Your Honor, upon your review of the

16   private trust documents today I respectfully request that the

17   private trust documents are not disclosed in the public.

18             Thank you, Your Honor.

19             THE COURT:  Well, let me just say this.  You offered

20   these to Judge Weigle.  Judge Weigle said that he would not

21   consider those because that would be an ex parte proceeding.

22   And in the context of an adversary action like we have today

23   and all these cases, all these criminal cases are adversarial

24   actions, it is inappropriate to accept ex parte documents.

25             And so I'm not going to consider those documents,

1   just like Judge Weigle didn't consider those documents because

2   the government needs the opportunity to review those in order

3   to respond.

4           So if you want to make those available -- I don't

5   know where the documents are that you're referring to.

6   Perhaps you have copies of them.  But I'm not going to

7   consider those documents privately outside of court without

8   those documents being made available to the prosecutor.

9           THE DEFENDANT:  Your Honor, I don't have a copy of

10  all of the documents available today.  I do have a copy of one

11  set of the documents that were actually delivered to the court

12  on October 23rd.

13          If I'm not mistaken, Your Honor, Judge Weigle did

14  mention that he was delivered -- that he was giving the

15  documents to the clerk.  So I'm not exactly sure if the clerk

16  has the original documents that could actually be recovered.

17          Is it impossible that you could possibly or we could

18  check with the clerk to see where the documents are that I

19  could actually recover the documents, please.

20          THE COURT:  Yes.  I will ask my courtroom deputy to

21  get in touch with Judge Weigle's clerk to find out if those

22  are available and where they are.

23          Judge Weigle is his own judge in his own courtroom

24  and his own clerk and his own system and I don't know whether

25  those can be found or not.  But they can't be found now at the

1    time of this hearing.

2              I am happy to -- if I find those I will -- or Ms.

3    Paul if she finds those -- that I'm happy to review those.

4    But I'm going to give a copy of those to the prosecutor.  And

5    I will consider those as a part of the detention question.

6              But I think that now we need to proceed with

7    whatever you want to say about that and if we find the

8    documents and I review them and somehow or another they change

9    my mind then that is fine.  I can order detention at that

10   point.

11             But I don't know where they are and I don't know

12   what they say.  I know the government hasn't seen them.  I

13   haven't seen them.  Nobody on my staff has seen them.  So we

14   will definitely try to find those.

15             THE DEFENDANT:  Thank you.  I do have one copy of

16   one set of the documents that was delivered to the court.  If

17   you would like I could give --

18             THE COURT:  Yeah, if you would.  Matthew step down

19   there and pick that up, please.

20             Okay.  This appears to be the Indictment; is that

21   correct?

22             THE DEFENDANT:  Please repeat, Your Honor.

23             THE COURT:  What you have here is a copy of the

24   Indictment, and then at the bottom of that, the very end --

25   and I'm going to give this to you in just a minute,

```
 1   Ms. Freeman -- it says, "I hereby convey and assign this true

 2   bill and interest to and for the account of the United

 3   States."

 4            Otherwise it's just a copy of the Indictment the way

 5   it appears.  Check that out Ms. Freeman.

 6            (Ms. Freeman complies).

 7            THE DEFENDANT:  Your Honor.

 8            THE COURT:  Let her take a look at it first.

 9            THE DEFENDANT:  Excuse me.

10            MS. FREEMAN:  Yes, Your Honor, it appears to be

11   exactly that, a true and accurate copy of the Indictment with

12   the handwritten note and also a one cent stamp appears to be

13   affixed to the bottom right corner.

14            THE COURT:  Right.  Okay.  So we're going to make

15   that a copy -- if it's okay with you, make that an exhibit

16   that will be a part of the record.  Okay?  Is that okay with

17   you?

18            THE DEFENDANT:  Yes.  Thank you, Your Honor.

19            THE COURT:  So we're going to make that -- if you

20   would just give that back to Ms. Paul, please.

21            Now, what else?

22            THE DEFENDANT:  Your Honor, I haven't been entitled

23   to release under Title 18 -- excuse me, under 18 U.S.C.

24   3145(b), motion this Court for revocation of the Order of

25   Detainment and state that I am entitled to be set at liberty
```

1   regarding the cause 3:20-cr-44-001(CAR).

2          Further request instruction from the Court to

3   whether I am entitled to any recovery rights with regard to

4   the same and that they be determined promptly upon the

5   revocation of the Order of Detainment and that the

6   instructions for recov -- excuse me -- and that the

7   instructions for recovery be construed and given immediately,

8   in the nature of justice and in good faith.

9          I have followed the rules to the best of my

10  knowledge and executed the instructions pursuant to the United

11  States and its interests and performed to the best of my

12  ability, fully conveying and delivering all granted property

13  during a time of war (known as Docket/Patent

14  number 3:20-cr-44-001(CAR) and personal property defined as

15  Marquet Antwain Burgess Mattox a/k/a Marquet Antwain Burgess

16  Mattox El a/k/a Marquet Burgess Mattox a/k/a Asim Ashunta El

17  a/k/a Asim El Bey, and other property including the true

18  bill and -- excuse me -- including the true bill to and for

19  the account of the United States.

20          I am fully reliant upon 12 U.S.C. 2, Section 95A(b)

21  and 50 U.S.C. -- excuse me -- 50 U.S. Code, Subsection

22  4305(b)(2) which states; any payment, conveyance, transfer,

23  assignment or delivery of property or interest therein, made

24  to and for the account of the United States, or as otherwise

25  directed, pursuant to this section or any rule, regulation,

1  instruction or direction issued hereunder shall to the extent

2  there will be a full acquittance and discharge for all

3  purposes of the obligation of the person making the same; and

4  no person shall be held liable in any court for or in respect

5  to anything done or omitted in good faith in connection with

6  the administration of or in pursuance of and in reliance on

7  this section, or any rule, regulation, instruction or

8  direction issued hereunder.

9        Therefore, Your Honor, based upon the standing laws,

10  executed duties, it is requested that this Court revoke the

11  detention order permanently and grant any other relief that

12  this Court deems just and right.

13        Thank you, Your Honor.

14        THE COURT:  Okay.  Well, first off let me tell you

15  that the document that I just made part of the record, which

16  is a copy of the Indictment with the handwritten

17  information -- is that your signature on there, sir?  I

18  couldn't read the signature but I assumed it was your

19  signature.

20        THE DEFENDANT:  That is correct, Your Honor.

21        THE COURT:  That has absolutely no legal validity

22  whatsoever.  It is worthless in this court.  It has nothing to

23  do whatsoever with your detention and so it cannot serve as a

24  basis for releasing you on bond at this point.

25        Now, as I told you, I went through and I

```
1    reviewed the -- I actually reviewed all the hearings -- and I
2    understand why Judge Weigle ruled the way he did in this case
3    and I agree with Judge Weigle about this.  And so I am going
4    to deny your motion for bond and I'm not going to revoke the
5    detention order.
6             Basically what this case involves is a highly
7    sophisticated scheme to defraud the Internal Revenue Service.
8    There are considerable millions of dollars that are at stake
9    in this case.  And this is not the routine roadside drug
10   distribution that I deal with so commonly.
11            The fact that you were able to pull this off as
12   successfully as you were, tells me that you are a bright and
13   capable man and that you have a high level of confidence in
14   this area of fraud.
15            And so that, I think, makes you, in a sense, more
16   dangerous than many of the other defendants that I deal with.
17            I want to point out in this case that there is a
18   forfeiture.  A forfeiture involves a house up in the Atlanta
19   area.  The house is worth something like maybe $600,000.  I
20   think there is a lien filed on that house.  But there is still
21   over a million dollars worth of money, cash, that he received
22   from the IRS that is unaccounted for, is that correct?
23            MS. FREEMAN:  That's correct, Your Honor.
24            THE COURT:  And so the reality is that if you are
25   released several things could happen.  One of them is that you
```

 1   wouldn't come back.  We would not be able to bring you back to

 2   court and that would give you the opportunity to avoid, help,

 3   one, to abscond because of the money that could potentially be

 4   out there.  Or, two, it could also assist you in trying to

 5   hide that money.  So I'm very concerned about that.

 6          I think that the situation is that because of the

 7   sophistication of this, because of the amount of money that

 8   was taken, because that money can still be potentially

 9   available, I don't know, because of those reasons, I think

10   that it's easy for me to believe that there is not really any

11   way I can ensure that you can be brought back into court.

12          And I read what Mr. Taylor said but I didn't find it

13   convincing.  I didn't find it convincing that he said that you

14   are a wonderful man, he's a man of great respect, he's helped

15   a lot of people in our community and I would never consider

16   him a flight risk.  Well, that's his opinion.  But I don't

17   accept that opinion.

18          I think that you showed considerable disrespect to

19   Judge Weigle at the first hearing.  And it is your position

20   and has been your position that you are not subject to the

21   jurisdiction of this Court.  And that's because you claim to

22   be an American Indian but that is not a defense in this case

23   number one.  And, number two, it does make me concerned though

24   that if you don't think you're subject to the jurisdiction of

25   this Court that makes it more likely for you to run, to

1    abscond.

2           So the primary concern of the Court is regarding the

3    risk of nonappearance or flight.  It's by a preponderance of

4    the evidence that there is no combination of conditions that

5    would be sufficient to ensure the Defendant's appearance in

6    trial and for other court proceedings.

7           And, of course, this is a case involving deception.

8    Deception also plays into the issue of flight.  And as a

9    consequence, I'm going to deny your motion.

10          Anything you want to say?

11          MS. FREEMAN:  Not on that matter, Your Honor.

12          THE COURT:  All right, sir.

13          THE DEFENDANT:  Is it okay for me to speak, Your

14   Honor?

15          THE COURT:  Yes.  Go right ahead.

16          THE DEFENDANT:  Your Honor, the Internal Revenue

17   Service seized $1,800,000 on September -- excuse me, on

18   February 19, 2019 through July 2019.

19          So in regards to funds -- in regards to funds or in

20   regards to money, the Internal Revenue Service -- the Internal

21   Revenue seized the funds.

22          So as far as -- I know you mentioned -- and I know

23   you mentioned in regards to having access to funds.  The

24   Internal Revenue Service seized those funds, Your Honor.

25          Your Honor, also Departamento de hesente de Puerto

1    Rico are the ones who basically mentioned on three separate

2    occasions that as far as the estate was received, processed

3    and approved.  And I know that's not a part of the reason that

4    we are here today but I'm wanting to respond to some of the

5    things that you mentioned in regards to being a flight risk

6    and in regards to sophisticated scheme.  I wanted to respond

7    respectfully to --

8              THE COURT:  Well, I'm happy to let you do that but

9    let's do this first.  Who is with you today, Ms. Freeman?

10             MS. FREEMAN:  Your Honor, we have Special Agent

11   Jeron Clark from the Internal Revenue Service.

12             THE COURT:  And how much money has been recovered

13   and how much is still out there?  Take your mask off, sir.

14             MR. CLARK:  I'm not sure of the exact number.  We

15   didn't seize all of it.  There was money in accounts that we

16   knew about but then he was moving them out of the account

17   before we could get it.  So I'm not exactly sure.

18             THE COURT:  But there is still money out there?

19             MR. CLARK:  Yes.

20             THE COURT:  There you go.  Now, I understand.

21   I understand what you said and I understand what he said and

22   that doesn't change my thought about what I said on that

23   issue.

24             Now, what else do you want to say?

25             THE DEFENDANT:  I wanted to mention as far as the

```
1    accounts, even when you check Wells Fargo Bank you can see

2    that the funds were seized out of Wells Fargo Bank.  There was

3    $1.8 million seized out of Wells Fargo Bank, Your Honor.

4            In regards to Judge Weigle, Your Honor, I did

5    apologize to Judge Weigle.  Judge Weigle did say that he

6    accepted my --

7            THE COURT:  Right.  And I want to commend you for

8    apologizing to Judge Weigle.  You did the right thing.

9            Your conduct in his court on -- what day.  That

10   would have been -- May 5th, I think.  No, no.  That was my

11   court.  October 7th.  That was the first hearing and that's

12   when you acted out in the courtroom and you were very

13   disruptive and he had to adjourn court.  And he came back and

14   you continued to be disruptive.  He held you in contempt.

15           And then when you came back for the Faretta hearing

16   you apologized.  And I don't remember the date on that.  But

17   you apologized for disrupting the court.  "I would like to

18   apologize to you and apologize to the Court for disrupting the

19   Court and again I apologize to you and I wish to purge my

20   contempt."  And so he said the contempt was over.  You're not

21   being held in contempt by me today unless you do something

22   that is contemptuous.

23           THE DEFENDANT:  No, sir, Your Honor.

24           THE COURT:  And so the contempt component of that is

25   passed you.  All right.  So go ahead.
```

1          THE DEFENDANT:  And also, Your Honor, I have never

2    felt that -- I want to assure that I'm saying it correctly --

3    never felt that I was not subject to the jurisdiction of the

4    court because I appeared in the court.  I received a summons

5    to appear in court.  I honored the summons.  I appeared in

6    court.  I was not arrested to appear in court.  I voluntarily

7    appeared in court in Macon.

8          So as far as you saying -- respectfully, Your Honor,

9    as far as you mentioned that feeling or believing that I'm not

10   subject to the jurisdiction of the court, I would have to

11   respectfully say, Your Honor, that I appeared in court and no

12   one had to come out and look for me, no one had to come out

13   and find me.  I did voluntarily appear to the court, Your

14   Honor.

15         THE COURT:  All right.  You did on that occasion.

16   And then based on what happened at that time in court and what

17   I understand about the arguments that you're making, I think

18   there is a serious question about whether or not you believe

19   that you're subject to the jurisdiction of the court.

20         What else would you like to say?

21         THE DEFENDANT:  As far as being an American Indian,

22   Your Honor, that is my heritage.  I'm not saying that because

23   I'm an American Indian that I'm not subjected to the courts in

24   the United States because I appeared in the court, for one.

25   And, two, the Bureau of Consular Affairs, Your Honor, had me

classified as a national, but not a citizen of the United

States but I still appeared in court.  I didn't hide.  I

didn't flee.  I still appeared in court.  Voluntarily appeared

in court.  No one had to come and find me, no one had to

arrest me, there was no warrant, I still voluntarily appeared

in court.

And I would say that, Your Honor, even given the

opportunity to research, study and prepare, that if you're --

you're requesting me to appear in court on August 7th, Your

Honor, I will appear in court on August 7.  However, I do ask,

if possible, the private trust documents that were delivered

to the court that they could actually be located prior to.

THE COURT:  Well, let me tell you this, as I've

already told you, we're going to try to locate those

documents.  I told you that I will review the documents.  I

told you that if the documents were convincing that you should

not be detained any further that I would release you.

THE DEFENDANT:  Thank you.

THE COURT:  But if the documents are like the one

you gave me that have no legal validity, that are useless,

then it's not going to make any difference about the

detention.  I haven't made up my mind about that because I

haven't seen the documents.  But if they are of the same type

then they are irrelevant to this proceeding and to the issues

that we are dealing with.

1              THE DEFENDANT:  I just want to take notes, Your

2    Honor.

3              THE COURT:  Okay.  Take your time.

4              THE DEFENDANT:  Your Honor, is it okay for me to ask

5    a question, please?

6              THE COURT:  I'm sorry.

7              THE DEFENDANT:  Is it okay for me to ask a question,

8    Your Honor?

9              THE COURT:  Yes, yes, by all means.

10             THE DEFENDANT:  Your Honor, between now and the time

11   that you locate the document, review the documents, do I

12   receive correspondence or any communication from the Court in

13   regards to whether you located it, whether you reviewed the

14   documents?

15             THE COURT:  Yes, we will let you know about that.

16             THE DEFENDANT:  Okay.

17             THE COURT:  We will, today, put Judge Weigle's clerk

18   on notice that we need these documents.  And if she can find

19   those documents then we should have the documents by early

20   next week.

21             I will tell you that Judge Weigle is out of town.

22   He's on vacation this week so he is not available.  And also

23   it's the middle of the day basically on Thursday.

24             But we will proceed straightaway with that.  And

25   then I will send documents to the prosecutor so she can review

```
1    them just like she reviewed the document that I made a part of
2    the record here.
3            And what I will also do is I will make that a part
4    of the record too, okay.  So we will make that document a part
5    of the record, whatever it says.  All right?
6            THE DEFENDANT:  Your Honor, if it's okay could I
7    mention one more thing or ask --
8            THE COURT:  Go right ahead.  I'm going to make some
9    rulings today about some of the issues that I've noticed that
10   have developed over the course of the hearings.  So I don't
11   think they are complicated to understand.  But this is the
12   opportunity for you to raise any question that you want to
13   raise today.  Anything that you want to talk about, we have
14   the opportunity to talk about that.
15           We are going to have another status conference,
16   pretrial hearing, whatever you want to call it, some time in
17   July before the time of the trial.  And I'm giving you
18   opportunities all along the way.
19           When we had the hearing last month you sat right
20   over there and there appeared to be -- it didn't seem to me
21   that you were prepared or knew what was going to happen and
22   that's why I moved it.  That hearing was very short.  And so
23   that's why we are here today, part of why we are here today.
24           So what would you like to say.
25           THE DEFENDANT:  Your Honor, Judge Weigle mentioned
```

```
1    October 23rd, and I think I mentioned this once before, so I
2    apologize for sounding redundant.  Judge Weigle mentioned that
3    he was going to have his clerk to make those documents a part
4    of the record.  So I'm not exactly sure if they have been made
5    a part of the record.  That part I'm not sure.  But I just
6    wanted to bring that to your attention, Your Honor.
7               THE COURT:  Okay.
8               THE DEFENDANT:  You mentioned that Judge Weigle's
9    court is totally -- I'm paraphrasing -- different and separate
10   from yours.  So I just wanted to bring that to your attention.
11              THE COURT:  Okay.  What else would you like to talk
12   about?
13              THE DEFENDANT:  Your Honor, in regards to forfeiture
14   you mentioned -- you mentioned forfeiture and property.  While
15   you're making the decision and you're reviewing documents, et
16   cetera -- is forfeiture or property actually seized prior to
17   you making the decision or is property seized in the course or
18   in the process?
19              THE COURT:  Well, let me just explain this.  Because
20   this was something that I have a note about that I was going
21   to deal with today and I want to hear from the prosecutor
22   about it.
23              I mean, the forfeiture decision is -- I assume it's
24   going to be part of the trial; is that correct?
25              MS. FREEMAN:  Your Honor, normally it would be.
```

1          I do want to point out I believe that the house that

2     appears in the indictment was the subject of civil seizure as

3     well by a case in the Northern District of Georgia which I

4     believe it has now been sold or -- it's still pending, Your

5     Honor.  But they are in the process of disposing of that

6     property at which point if they do so before the trial is

7     concluded we will file a document withdrawing that part of the

8     forfeiture if it is no longer needed.

9          THE COURT:  Well, let me just ask you this question.

10    If the government has taken title to that property under a

11    civil proceeding why does it matter whether it sold or not?

12         MS. FREEMAN:  Your Honor, they do not have the title

13    for it yet.  I'm checking with the IRS on it.

14         But it was bought with the proceeds of the scheme is

15    what the government will allege.

16         THE COURT:  Right.

17         MS. FREEMAN:  So it will be part of our proof, if

18    that's what Your Honor is asking, at trial.

19         THE COURT:  No, it's not that.  It's just how do you

20    deal with the -- How does the Court deal with the forfeiture?

21         I mean, one of the ways that we have dealt with

22    it -- it doesn't come up very often.  But the last time we had

23    a forfeiture, which seems like it was long ago, is we let the

24    jury come back with the verdict and they found in that case

25    that the defendant was guilty and then we presented evidence

related to the forfeiture, and so it was a two-step trial.
And that's the way that I think of it as normally being done.

But we've never had a situation that I recall where
there was a civil action.  And so I want you to take a look at
that because if we don't have to deal with that with the jury
that's great.

MS. FREEMAN:  Yes, Your Honor.  We expect to have
more information on that before trial.

THE COURT:  Okay.  So we may or may not deal with
the forfeiture issue at the trial of the case.  If we do then
the government would have to put up the evidence.  Of course
the evidence is already going to be put up as a part of the
case in chief.

We will look into how this is going to be handled.
And I'm charging the government with letting me know about the
affect of a civil action and what that does to the title and
how all that works out.  So we will take up that later.  All
right.

THE DEFENDANT:  Your Honor, if I'm not mistaken, a
civil action pursued or took place after this particular
action.  So if a civil action took place -- well, with this
particular action preceding prior to a civil action, would the
civil action be placed on hold until you make your
determination or would the civil action proceed forward?  It
appears to be double jeopardy in regards to a -- maybe I'm not

1    using the correct words so I do apologize.

2         THE COURT:  No, no, no.  No, it's not double

3    jeopardy.  And here's the thing that you need to understand.

4    I assume that this civil action is filed in a state court.

5         MS. FREEMAN:  Your Honor, it's filed in federal

6    court, but in the Northern District of Georgia because the

7    house is located in Lilburn.

8         THE COURT:  Okay.  So this civil action proceeds

9    independently of this case, as far as I understand.  It

10   doesn't have an impact on this.  It is not a determination of

11   your guilt if the government takes title to it and sells it.

12   That wouldn't even be admissible in court, not in my court

13   anyway.

14        And so that proceeding is separate and it doesn't

15   impact this case, this criminal proceeding in my mind, unless

16   it has some impact about how the forfeiture claim is handled

17   by the jury.  And so the forfeiture claim has nothing to do in

18   the sense of the case in chief with your guilt or innocence.

19        The jury is not even going to know about it.  I'm

20   not going to tell the jury that there is a forfeiture.  They

21   won't know about it until they come back with a guilty

22   verdict, if, in fact, they do come back with a guilty verdict.

23        Now, these things that I'm saying to you now are

24   based on what I have done in the past and in the way back past

25   and some of this might change.  But I don't have enough

1  information at this point to make any ruling on it.  I need to

2  hear back from the government on that.

3          So I'm happy to hear further from you about this

4  forfeiture issue at a later time because we will have another

5  hearing before this case goes to trial on August 7th.

6          Is the government clear on that?

7          MS. FREEMAN:  Yes, Your Honor.

8          And to clarify as far as dollars go, the actual loss

9  that the government intends to prove beyond a reasonable doubt

10 at trial is north of $5,000,000.

11         THE COURT:  Okay.

12         MS. FREEMAN:  The accounts that he referred to that

13 were seized were approximately $1.8 million in liquid funds.

14 We also understand he has paid about $90,000 to the IRS.  And

15 the house value, we believe, is around $600,000.

16         So the amount outstanding will still greatly exceed

17 even any issue at forfeiture.

18         THE COURT:  Okay.  What else would you like to say,

19 Mr. Mattox?

20         THE DEFENDANT:  Your Honor, you mentioned that there

21 will be another conference prior to August 7th.  Do you have

22 that date, Your Honor.

23         THE COURT:  Not yet.  But it will be sometime in mid

24 to late July.  That's all I can tell you at this point.

25         THE DEFENDANT:  Just one second, Your Honor.

```
1              THE COURT:  Take your time.

2              THE DEFENDANT:  Your Honor, in regards to the

3    private trust documents that you are going to put Judge

4    Weigle's clerk on notice today, once you make copies or make

5    it a part of the record for the government, do you or anyone

6    communicate with me to --

7              THE COURT:  Yes, we're going to let you know.

8              THE DEFENDANT:  Okay.

9              THE COURT:  We will give you -- I'm not sure how we

10   will do it, but we will give you a report.  And it may just be

11   an order or it may just be a letter.  I just want to look at

12   it and see what it says.  But we will let you know.  All

13   right.

14             THE DEFENDANT:  One last question.

15             THE COURT:  Okay.

16             THE DEFENDANT:  Now, in regards to the private trust

17   documents.  Once you review them, have a look at them, and

18   make copies of them, are the originals retained by the court

19   or are the originals actually recovered.

20             THE COURT:  It sounds to me like, from what you have

21   described -- and again I don't know -- but it sounds like

22   Judge Weigle made those documents part of the record.  So

23   those documents will essentially come into my court as part of

24   the record.

25             THE DEFENDANT:  Your Honor, if I'm not mistaken,
```

1    that's what Judge Weigle mentioned.

2            THE COURT:  But even if they didn't come in to the

3    court I will make them a part of the record.  I want to make a

4    part of the record whatever you want made a part of the

5    record.

6            And you didn't request copies of these hearing

7    transcripts but I'm giving them to you because I want you to

8    have every opportunity to understand what has gone on.  And

9    I'm also going to make all of them a copy of the record.  So

10   you tell me what you want in the record and assuming that it's

11   admissible I'll let it in.

12           THE DEFENDANT:  Well, the private trust documents,

13   Your Honor, given the fact that they are private trust

14   documents I would like to request that you review the private

15   trust documents and the United States review the private trust

16   documents prior to those private trust documents being

17   disclosed in the public.  You said I could request.  So prior

18   to them being -- you review them --

19           THE COURT:  Well, let me say this.  When you come

20   into court and you make arguments and you base those arguments

21   on certain documents, the documents come in to the court

22   record and the court record is available.  For example, it's

23   available to the Judges in the Eleventh Circuit Court of

24   Appeals, and the clerks and their law clerks and so forth and

25   so on.  And I'm not clear at all why these ought to be not a

```
 1    part of the public and made a part of -- I'm not clear why
 2    that should be the case.  I will look at them and see what
 3    they have to say and it could be that once I look at them I
 4    would understand why.
 5              And another thing -- well, okay.  That's what I can
 6    tell you about that.
 7              THE DEFENDANT:  Thank you, Your Honor.
 8              THE COURT:  Anything further?
 9              MS. FREEMAN:  Your Honor, from the government's
10    side, we have been asked by the IRS to give them 90 days
11    notice for the travel of witnesses.  We do have multiple
12    witnesses that will have to likely come from DC and other
13    states in order to authenticate a lot of these documents and
14    testify as to the detection of the scheme.  These would be
15    essential witnesses so we would ask, if possible, for a 90 day
16    period of time before trial commences.
17              THE COURT:  Well, didn't you get 60 days?
18              MS. FREEMAN:  The date that Your Honor mentioned in
19    August is approximately 60 days from now.
20              THE COURT:  And that's not good enough?
21              MS. FREEMAN:  Your Honor, I pass on what the IRS has
22    requested of me.
23              THE COURT:  Well, I will consider that and I think
24    that we can move it -- can't we move it to August 14th?
25              We could move it to the 16th.  I just don't know
```

1   when we have another trial week and I will talk to Ms. Paul

2   about it and we'll see if there is something later.  But, I

3   mean, that's a lot of time to get ready for a trial.

4           MS. FREEMAN:  Thank you, Your Honor.

5           THE COURT:  And I want to get this dealt with.

6           What else?

7           MS. FREEMAN:  With regard to the speedy

8   calculations, Your Honor, we would ask that given the fact

9   that Mr. Mattox indicated at the last pretrial conference he

10  had not had an opportunity to prepare and that this conference

11  was continued at this request, we ask that any time be

12  excluded from speedy trial calculations to this date.

13          THE COURT:  Do you have any response to that?

14          THE DEFENDANT:  Your Honor, could she repeat that

15  one more time, the last part, please.

16          THE COURT:  Go ahead.  Repeat it, please.

17          MS. FREEMAN:  Sure.  With regards to speedy trial

18  calculations and deadlines set by the Court for the

19  commencement of trial, we ask that the time from the last

20  pretrial conference to the time that the Court sets for trial

21  be excluded from the speedy trial calculations.

22          THE COURT:  And tell him why.

23          MS. FREEMAN:  There is a deadline that is set by the

24  law in order for you to receive a --

25          THE COURT:  No, no.  It was based on what he did.

1          MS. FREEMAN:  Yes, Your Honor.

2          It was because this pretrial conference has been

3  continued or pushed to a later date from the last date because

4  you had not had an opportunity to prepare and this was pushed

5  back at your request so that you could be prepared today.

6          THE COURT:  Do you want to say anything in response

7  to that?

8          THE DEFENDANT:  So, Your Honor, additional hearings

9  would be delayed or pushed back to assure that I have the

10  opportunity to prepare.  Am I understanding that correctly?

11          THE COURT:  Well, that's part of it.  I think there

12  are certain circumstances.  I'm really not supposed to give

13  you legal advice and I can't give you legal advice.

14          But I set the trial of this case for -- I've been

15  saying August 7th, but it's actually August 9th, to give you

16  ample opportunity to prepare for trial.  And I really felt

17  like -- when did the notice go out?  The notice went out in

18  May, at some point in May.

19          And I really thought that would give you ample

20  opportunity and I thought that that would give the government

21  ample opportunity to get ready for the trial in this case.

22          But there have been matters, for example, this

23  detention hearing and your lack of preparation for that, which

24  was understandable -- I'm not at all complaining or

25  criticizing you about that -- that has caused delay.

1            And so the government has asked for the time not to

2    count from what date to when?  Starting when until the time of

3    trial?

4            MS. FREEMAN:  Your Honor, from the setting of the

5    status conference which appears to have been May 24th through

6    the beginning of trial.

7            THE COURT:  Okay.  Do you want to say anything about

8    that, sir?  Do you have an objection to that?

9            MS. FREEMAN:  Oh, Your Honor, I misspoke.  It's May

10   7th.

11           THE COURT:  Okay.

12           THE DEFENDANT:  Your Honor, I understand that you're

13   not able to give legal advice.  But I would like to ask when

14   the government says, "time not to count."

15           THE COURT:  It's time not to count related to the

16   Speedy Trial Act.  The Speedy Trial Act relates to the time in

17   which cases need to be tried after you've been indicted.

18           THE DEFENDANT:  Thank you, Your Honor, I have

19   clarity.

20           THE COURT:  Okay.  Well, this is an example of why

21   you need a lawyer.  Because I can't give you any legal advice.

22   She obviously can't give you any legal advice.  This is a

23   technical issue that you have to deal with.  To me it seems

24   like it's appropriate for it not to be counted.  I'm trying to

25   get the case tried as soon as I can.  I know you object to the

detention order.  I've explained to you why I thought it was

appropriate.  I'm going to consider the documents that you

have submitted to Judge Weigle and may be that will change my

mind, may be it won't.  I don't know.  But I'll give you a

ruling on that.  So we're trying to get this case to trial.

Now, I want to make some rulings.  These are legal

rulings.  And I don't know that there is going to be a problem

with this or not.

You have not mentioned any of this today, but I'm

telling you what's not allowed in the trial of this case and

what you can't argue and what you can't tell the jury, what

you can't use as a defense.

You are not authorized or allowed to say that your

name is protected by the Fourth Amendment and the Court can't

use it.

You are not allowed to say that your name is

protected under the Lanham Act as a trademark and the Court

can't use it.  Your name is not private.

You cannot say that you are a attorney-in-fact for

the trademark.

You cannot say that the trademark is being deleted

by using it in court.

You cannot say that you are not subject to the power

and jurisdiction of this Court.

You cannot say that the conveyances to and for the

account of the United States is precluded.  You can't make

that argument.

      And I assume that that's based on what I saw with

the copy of the indictment that you presented to me earlier.

      And you can't interrupt the Court or the prosecutor.

      Now, these are basically issues that were raised or

statements that you made in the October 7 hearing.  You

haven't said -- well, you said a little bit of that today, but

most of it you haven't said.

      And you were very obstructive, but you apologized.

Your conduct today in court has been fine.  If you proceed

further in the way you have conducted yourself today there

won't be a problem.

      But the Court has the authority under the Federal

Rules of Evidence to decide how the trial should proceed.  And

the Court has the authority and the responsibility to narrow

the issues.  And as a consequence of that what I have done is

I have ruled out as a matter of law these propositions that

you raised before Judge Weigle.  And you're not going to be

able to talk about any of this during the trial of the case.

      Now, I will look at the documents that you say you

provided to Judge Weigle.  That could change my mind about

conveyances to and for the account of the United States being

precluded.

      But the trial has to move smoothly.  You have to

1   conduct yourself with the proper decorum.  And if you don't

2   then there are various things I can do to you.  Probably the

3   most severe is to take you out of the courtroom and let the

4   trial proceed.

5           So, I thought that you behaved well in the hearing

6   that we had last month.  You have behaved well today.  And if

7   you proceed in the same vein then I don't think there are

8   going to be any problems with you.

9           But these issues I have now ruled out.  The issues

10  that I have ruled out are essentially reserved for you for

11  appeal to the Eleventh Circuit Court of Appeal.  If you want

12  to object and file the motion -- I'm sorry, and file an appeal

13  based on that ruling then you can do that.  But that's the end

14  of it in this Court.

15          Do you follow all that?

16          THE DEFENDANT:  Your Honor, I was attempting to

17  write as fast as you was talking.

18          THE COURT:  Well, you're going to have a copy of

19  what I said because this is going to be transcribed and it

20  will be sent to you and you will have the opportunity to

21  review it, exactly the way I said it.  Okay.

22          THE DEFENDANT:  And, Your Honor, if I'm

23  understanding correctly, the things that you ruled out you

24  just mentioned that I would have an opportunity to appeal the

25  things that are ruled out -- I just want to make sure that I'm

1  hearing you clearly.

2         THE COURT:  Yes, yes.  What I just ruled out, which

3  will be a part of the record and will be a part of the action

4  of the Court, is something that you can appeal.  So if you

5  disagree with me, for example, about the Lanham Act protecting

6  your name and your name can't be used in the courtroom then

7  you can appeal that.  Okay.

8         THE DEFENDANT:  Is it okay -- excuse me, Your Honor.

9  Your Honor, is it okay for you to repeat one thing for me,

10  please.  You mentioned -- one of the last things you mentioned

11  is cannot say -- I think you said conveyed to and for the

12  account of the United States, am I correct?  I'm just trying

13  to make notes, Your Honor.

14         THE COURT:  Yes.  I said -- you use the phrase which

15  actually means nothing to me and it didn't mean anything to

16  Judge Weigle either.  I think that was one of the things that

17  he pointed out.  I don't know what you're talking about there.

18  But I think it's what you were referring to in the indictment

19  copy.  I think that's what you were referring to.  And

20  probably in the documents, these private trust documents that

21  you are referring to.  But it's conveyances to and for the

22  account of the United States.  The fact that there was some

23  kind of conveyance that somehow exonerates or exculpates you

24  from criminal liability in this case.  Based on what I

25  understand these documents to be, at this point, is not a

 1   defense to this case and won't be admissible.

 2          Now, if there is something that I have wrong about

 3   this then you are certainly welcome to try to convince me

 4   otherwise and I'll be happy to hear from you about that.

 5          But I've already told you that the copy of the

 6   indictment with the handwriting which is yours is legal

 7   nonsense, irrelevant and of no evidentiary value.

 8          THE DEFENDANT:  Thank you, Your Honor.

 9          THE COURT:  Anything else?

10          MS. FREEMAN:  Not from the government, Your Honor.

11          THE COURT:  Well, we will get back with a date for a

12   hearing.  And I will talk to Ms. Paul about the possibilities

13   of moving this.  But you're probably pretty close to 70 days

14   if I move it into that second full week in August.

15          What else?  Anything else?

16          MS. FREEMAN:  No.

17          THE COURT:  Thank you very much.

18

19                  (Proceedings concluded at 11:22 a.m.)

20                        END OF RECORD

21

22

23

24

25

```
1                    CERTIFICATE OF OFFICIAL REPORTER

2

3          I, Tammy W. DiRocco, Federal Official Court Reporter,

4    in and for the United States District Court for the Middle

5    District of Georgia, do hereby certify that pursuant to

6    Section 753, Title 28, United States Code, that the foregoing

7    is a true and correct transcript of the stenographically

8    reported proceedings held in the above-entitled matter and

9    that the transcript page format is in conformance with the

10   regulations of the Judicial Conference of the United States.

11

12                    Dated this 7th day of June, 2021

13

14

15   _____
                    Tammy W. DiRocco CCR
16                  Federal Official Court Reporter

17

18

19

20

21

22

23

24

25
```