## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO.  3:20-CR-44-CAR-CHW** |
| **v.** | |
| **MARQUET MATTOX,** | GOVERNMENT'S TRIAL BRIEF |
| Defendant. | Trial Date: August 16, 2021 |

### GOVERNMENT'S TRIAL BRIEF

The United States of America, by and through its attorneys, Peter D. Leary, Acting United States Attorney for the Middle District of Georgia, Lyndie M. Freeman, Assistant United States Attorney, and Jessica A. Kraft, Trial Attorney, U.S. Department of Justice, Tax Division, submits this Trial Brief to advise the Court of the facts underlying this case, the government's expected evidence at trial, and issues that may arise at trial.

### STATEMENT OF THE CASE

The indictment charges the Defendant, Marquet Antwain Burgess Mattox, also known by the above-captioned names, with nine counts of wire fraud, in violation of 18 U.S.C. § 1343, ten counts of false claims against the government, in violation of 18 U.S.C. § 287, and one count of theft of government funds, in violation 18 U.S.C. § 641.  The government, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), seeks forfeiture in the form of a personal money judgment, in an amount to be determined.  Trial is scheduled to begin on August 16, 2021.  The Defendant has elected to proceed pro se.

1

## I.   <u>Government's Theory</u>

At trial, the Government anticipates the evidence to show the following:   Between September 2016 and August 2018, the Defendant filed thirty-one fraudulent Internal Revenue Service (IRS) Forms 1041, U.S. Income Tax Return for Estates and Trusts, claiming approximately $165 million in tax refunds.   Although the IRS stopped most of the anticipated tax refunds, the IRS issued tax refunds that exceeded $5 million.   The Defendant used those funds to purchase, among other things, a new home, furniture for that home, and a luxury vehicle.

The Defendant began his pattern of false returns in September 2016.   On or about September 10, 2016, the Defendant electronically filed an IRS Form 1041 in the name of Kemahra Investment Trust for the 2015 tax year.   He claimed the entity had earned $155,000 in income, that $75,000 in federal taxes had been withheld from that income and paid to the IRS, and that the entity was entitled to a tax refund of $9,932.   On or about September 22, 2016, he electronically filed another tax return in the name of Burgess Mattox Bey Investment Trust for the 2015 tax year—claiming $4,881,000 in income, $2,440,000 in withholdings, and a refund in the amount of $323,848.   Those two returns were false.   As the Defendant knew, neither entity had earned any income or paid any withholdings to the IRS.   As requested by the Defendant, the IRS issued the refund checks to the Defendant in the amounts $9,992.97 and $325,408.97, respectively, for those entities.   The Defendant then opened and/or caused to be opened Wells Fargo bank accounts in the names of those entities—accounts ending in 5797 (Kemahra Investment Trust) and 4976 (Burgess Mattox Bey Investment Trust)—into which he deposited the checks.   He maintained control of those accounts.

Following the Defendant's initial success, he grew bolder in his scheme, significantly increasing the number and value of his fraudulent refund claims.   The table below details thirty-

one trust income tax returns filed by the Defendant in the names of various entities between September 2016 and August 2018.

| Date Received by IRS | Tax Year | Entity | Total Income Claimed on Return | Total Payments Claimed on Return | Refund Claimed on Return | Refund Issued |
|---|---|---|---|---|---|---|
| 9/10/2016 | 2015 | Kemahra Investment Trust | $155,000 | $75,000 | $9,932 | $9,992.97 |
| 9/22/2016 | 2015 | Burgess Mattox Bey Investment Trust | $4,881,000 | $2,440,000 | $323,848 | $325,408.97 |
| 1/13/2017 | 2015 | Burgess Mattox Bey Trust | $23,421,837 | $23,421,000 | $13,258,124 | - |
| 3/2/2017 | 2016 | Kemahra Investment Trust | $9,975,000 | $4,987,500 | $660,569 | - |
| 4/4/2017 | 2015 | Marquet Antwain Burgess Mattox Trust | $9,762,000 | $9,762,000 | $5,527,494 | - |
| 5/31/2017 | 2015 | Burgess Mattox Bey Trust | $49,000,000 | $24,500,000 | $3,236,202 | - |
| 8/3/2017 | 2015 | Marquet Antwain Burgess Mattox Trust | $9,762,000 | $9,000,000 | $5,135,939 | - |
| 8/4/2017 | 2016 | Marquet Antwain Burgess Mattox Trust | $8,975,000 | $9,000,000 | $5,362,115 | - |
| 9/21/2017 | 2016 | Kamili Investment Trust | $5,000,000 | $9,878,256 | $7,900,000 | - |
| 9/22/2017 | 2016 | Burgess Mattox Bey Trust | $250,000 | $600,000 | $502,744 | - |
| 9/22/2017 | 2016 | Kamilya Investment Trust | $5,000,000 | $9,978,256 | $8,000,000 | - |
| 11/7/2017 | 2015 | Kemahra Investment Trust | $155,000 | $155,000 | $89,932 | - |
| 11/7/2017 | 2015 | Burgess Mattox Bey Investment Trust | $4,881,000 | $4,881,000 | $2,764,804 | $2,571,783.77 |
| 11/17/2017 | 2016 | Burgess Mattox Bey Trust | $17,660,000 | $17,660,000 | $9,997,779 | - |
| 11/17/2017 | 2016 | Kamili Investment Trust | $17,600,000 | $17,600,000 | $9,963,819 | - |
| 11/18/2017 | 2016 | Kemahra Investment Trust | $17,660,000 | $17,660,000 | $9,997,779 | - |
| 11/18/2017 | 2016 | Burgess Mattox Bey Investment Trust | $17,660,000 | $17,660,000 | $9,997,779 | - |
| 11/18/2017 | 2016 | Marquet Antwain Burgess Mattox Trust | $17,660,000 | $17,660,000 | $9,997,779 | - |
| 11/18/2017 | 2016 | Kamilya Investment Trust | $17,690,000 | $17,670,000 | $9,994,759 | - |
| 1/17/2018 | 2016 | Marshana El Investment Trust | $5,000,000 | $4,200,000 | $2,032,219 | $2,106,706.61 |
| 1/17/2018 | 2016 | Asim El Bey Trust | $4,500,000 | $2,250,000 | $299,219 | - |
| 1/17/2018 | 2016 | Nwatson Trust | $4,800,000 | $2,400,000 | $319,019 | - |
| 1/17/2018 | 2016 | Nycholas Kemahra Mattox El | $3,200,000 | $1,600,000 | $213,419 | - |
| 1/18/2018 | 2016 | Watson El Trust | $3,000,000 | $1,500,000 | $200,219 | - |
| 1/18/2018 | 2016 | Eric Marice Baldwin El Trust | $4,800,000 | $2,400,000 | $319,019 | - |

| 2/7/2018 | 2015 | Marquet Antwain Burgess Mattox Trust | $40,000,000 | $40,000,000 | $22,642,202 | - |
|----------|------|-------------------------------------|-------------|-------------|-------------|---|
| 2/7/2018 | 2016 | Kamilya Investment Trust | $60,000,000 | $37,000,000 | $10,962,219 | - |
| 2/8/2018 | 2016 | Burgess Mattox Bey Trust | $142,156,200 | $71,700,000 | $10,006,428 | - |
| 2/27/2018 | 2016 | Watson El Trust | $40,000,000 | $20,000,000 | $2,642,219 | - |
| 8/10/2018 | 2015 | Kemahra Investment Trust | $155,000 | $155,000 | $89,888 | - |
| 8/10/2018 | 2015 | Burgess Mattox Bey Investment Trust | $4,881,000 | $4,881,000 | $2,764,804 | - |

In total, the Defendant filed returns in the names of at least twelve fictitious entities—claiming approximately $550 million in income, $400 million in withholdings and other tax payments, and $165 million in tax refunds.  All of those returns were false, and the Defendant knew it.  Not one of those entities had earned any income, and none had any withholdings nor had otherwise paid the IRS.  None of the entities were owed the refunds they claimed.  This was simply theft via false claims.  The IRS's filter system detected most of the false returns, but on four occasions, the Defendant's persistence caused $5,013,892.32 in fraudulently derived refund checks to be issued.  The Defendant then deposited the refund checks into Wells Fargo bank accounts—accounts ending in 5797 (Kemahra Investment Trust), 4976 (Burgess Mattox Bey Investment Trust), 3495 (Burgess Mattox Bey Investment), and 7200 (Marshana El Investment Trust)—which he opened and/or caused to be opened only *after* the refund checks were issued.  The Defendant then spent the money on a new house in Lilburn, Georgia, furniture for that house, a Cadillac Escalade, dental work, dining, travel, and other personal expenses.

The Government will prove the Defendant filed or caused to be filed all the tax returns identified above, some electronically via interstate wire, that he knew the returns were false and fraudulent when they were filed, and that he knew he was not entitled to the tax refunds issued.

II.   **Procedural History**

On September 17, 2020, a federal grand jury sitting in the Middle District of Georgia, Athens Division, indicted the Defendant on nine counts of wire fraud, in violation of 18 U.S.C. § 1343, ten counts of false claims against the government, in violation of 18 U.S.C. § 287, and one count of theft of government funds, in violation of 18 U.S.C. § 641.   (ECF No. 1, Indictment.) Trial is set to begin on August 16, 2021.  The government expects its case-in-chief to last between two and three days.  The Defendant is proceeding pro se.  Throughout this case, he has made arguments and assertions consistent with Sovereign Citizen and Moorish National ideology and consistent with known schemes espoused by "tax defiers" and/or "tax protestors".

The Court has precluded the Defendant from introducing certain evidence, making certain statements, and asserting certain defenses at trial.  (ECF No. 51, Order at 4–6.)

> 1. Defendant is not allowed to argue that his name is protected under the Lanham Act as a trademark.
>
> 2. Defendant is not allowed to argue that he is an attorney-in-fact for the trademark.
>
> 3. Defendant is not allowed to argue that the trademark is being deleted by using it in court.
>
> 4. Defendant is not allowed to argue that he is not subject to the power and jurisdiction of the Court.
>
> 5. Defendant is not allowed to argue that the conveyances to and for the account of the United States are precluded.
>
> 6. Defendant is not allowed to use the "trust documents"[1] as part of his defense.

---

[1]  The "trust documents" referred to by the Court include: a copy of the indictment, on which the defendant wrote, "I hereby convey and assign this TRUE BILL and interest to and for the account of the United States[,]" affixed a stamp, and signed his name (ECF No. 22-1); and documents that purport to be certified birth records of the Defendant, on which the sentence, "I hereby assign this debt to the United States," is written (ECF No. 22-2).

7. Defendant is not allowed to argue that the debt has been settled or reduced.

8. Defendant is not allowed to state that he submitted documents to any department in Puerto Rico to settle the debt and such documents were confirmed to be received.

9. Defendant is not allowed to use his nationality as an American Indian as part of his defense.

10. Defendant is not allowed to argue about inheritance by an American Indian and pledging portions of an estate in exchange for money.

(*Id.*)  The Court's Order does not preclude the Defendant from asserting a good-faith defense or arguing that he lacked the requisite intent for any of the offenses charged.  If the Defendant believes the Court's Order precludes him from asserting a recognized defense to which he is entitled, the government suggests the Defendant raise the issue before trial so that it may be properly litigated.

### III.   <u>Government's Evidence at Trial</u>

The government intends to introduce testimony from three IRS witnesses, two witnesses with knowledge of the Defendant's scheme proceeds, and a representative from the Defendant's internet service provider at times relevant to the scheme.  In total, the government expects to call six witnesses in its case-in-chief.  It also intends to introduce various IRS records, summaries thereof, as well as bank and other commercial business records.

On August 4, 2021, this Court granted the government's Motion to Admit Certified Business Records (ECF No. 48).  (ECF No. 50, Order.)  Those records include: Wells Fargo bank records for accounts in the names of Burgess Mattox Bey Trust, Burgess Mattox Bey Investment Trust, Kemahra Investment Trust, Nwatson Trust, and Marshana El Investment Trust; the settlement statement and related documents for the Defendant's Lilburn, Georgia, home purchase; the Defendant's customer file from Haverty's Furniture Company; the Defendant's customer file

from Classic Cadillac of Atlanta; the Defendant's UPS mailbox service agreement and related documents for two mailboxes associated with the tax returns filed; and internet service provider records from Charter Communications.  (ECF No. 48, Gov't Mot to Admit at 3–4.)  On August 9, 2021, the government provided binders of the exhibits it intends to use at trial to the Court and the Defendant.[2]  As of the date of this filing, the parties have not made any evidentiary stipulations.

## A. Internal Revenue Service

The government's IRS witnesses include a court witness coordinator, a revenue officer, and a special agent.  Together, they will authenticate and testify to IRS records, including the tax returns identified herein, records showing the lack payments to the IRS from and on behalf of those entities, the account transcripts of the entities for which those returns were filed, and the four refunds checks issued to three of those entities.  The IRS records will show all the returns identified herein were filed, some electronically via interstate wire, that none of the entities for which the returns were filed paid any withholdings or made any payments to the IRS, and that three of the entities received tax refund checks from the IRS.  Due to the voluminous nature of the IRS records, the government also intends to introduce an exhibit summarizing information contained in those records—namely, the tax returns at issue, the Internet Protocol (IP) addresses from which some of the returns were filed (some were mailed), the total withholdings and payments received by the IRS for the entities for which the returns were filed, and the amount of any refunds issued, plus other documents the government does not intent to introduce as substantive exhibits in an effort to

---

[2] The government intends to use certified copies of IRS records.  As noted in the trial exhibit binders, there are eight exhibits for which the government has not yet received the certified versions from the IRS.  (Specifically, Exhibits 3-19, 3-20, 3-31, 3-40, 3-42, 3-44, 3-70, and 3-75.)  The government has included non-certified versions of the exhibits in the trial exhibit binders as placeholders for these exhibits.  The government will provide the Court and the Defendant updated versions of these exhibits once it has received the certifications.  Regardless, the government intends to call a qualified custodial witness from IRS to authenticate all of the IRS records.

reduce the volume of exhibits presented.  The government also intends to present a demonstrative exhibit related to the specific returns charged in the indictment.

The IRS revenue officer will testify that she observed and spoke with the Defendant at his newly purchased home in Lilburn, Georgia, with his newly purchased 2018 Cadillac Escalade. The officer will also testify the Defendant has not filed individual income tax returns since 2003 and that he used some of the scheme proceeds to pay approximately $70,000 towards a personal tax debt with the IRS, in addition to making other personal purchases, and admitted he was the trustee of the Burgess Mattox Bey Investment Trust.

The IRS special agent will testify to several admissions made by the Defendant, including that he filed almost all of the tax returns identified herein, that he opened the UPS mailboxes associated with the trusts, that he controlled the entities, that none of the entities had any business activities, and that he controlled the Wells Fargo bank accounts for some of the entities.  The special agent will also testify the Defendant had no other income during the scheme other than what he received in tax refunds from the IRS.

**B.  Bank Records**

The Defendant opened and/or caused to be opened several bank accounts for his various trusts.  Wells Fargo records show bank accounts were created for, and IRS refund checks deposited into, Burgess Mattox Bey Investment Trust, Kemahra Investment Trust, and Marshana El Investment Trust only after the IRS had issued tax refund checks to those entities.  The Wells Fargo bank records also show those accounts had no income other than the refund checks deposited into them.  The government intends to show a demonstrative exhibit detailing the deposits into the bank accounts.

### C.  Scheme Proceeds

With money he received from the IRS, the Defendant paid $600,000 for a house in Lilburn, Georgia, and over $100,000 to furnish and decorate it.  The home seller will identify the Defendant as the purchaser.  A design consultant formerly employed at Haverty's Furniture Company will testify to the more than $100,000 in furniture and design purchased by the Defendant.  The Defendant told the consultant he received the money to furnish and design the home from the United States Government.  The government also intends to show a demonstrative exhibit detailing some of the Defendant's spending of the proceeds from his fraud.

### D.  Internet Service

At times relevant to the scheme, the Defendant's internet service was provided by Charter Communications.  A representative from Charter will introduce the Defendant's subscriber records and explain how the IP addresses associated with some of the tax returns electronically filed were registered to the Defendant at an address in Athens, Georgia.

## IV.  <u>Charged Offenses</u>

### A.  Counts One Through Nine: Wire Fraud

The wire fraud statute, 18 U.S.C. § 1343, provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

The elements of wire fraud are that: (1) the Defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises; (2) the false pretenses, representations, or promises were about a material fact; (3) the Defendant

acted with the intent to defraud; and (4) the Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud. Offense Instruction No. 51, Eleventh Circuit Pattern Jury Instruction (Rev. 2021). In essence, the government must prove the Defendant intentionally participated in a scheme to defraud and that he transmitted a material misrepresentation via interstate wire to further the scheme. *See United States v. Estepa*, 998 F.3d 898, 908 (11th Cir. 2021) (quoting *United States v. Maxwell*, 579 F.3d 1281, 1299 (11th Cir. 2009)). The evidence detailed above shows he did. The Defendant, by his own admission, and evidenced by the IP addresses registered to him by name and address, electronically filed multiple trust income tax returns, claiming substantial income, withholdings or payments to the IRS, and tax refunds due. Those returns were materially false in that the entities for which they were filed earned no income, paid no withholdings nor made any other payments to the IRS, and were not due any refund. The Defendant knew that the tax returns were false and that the trusts had not made any valid payments to the IRS. Lastly, the returns were filed from Georgia and crossed interstate wires before being received by the IRS.

### B. Counts Ten through Nineteen: False Claims Against the Government

The false claims statue, 18 U.S.C. § 287, provides:

> Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

The elements of that offense are: (1) the Defendant knowingly presented a false claim against the United States to an agency of the United States; (2) the claim was based on a false or fraudulent material fact; and (3) the Defendant acted intentionally and knew that the claim was false and fraudulent. Offense Instruction No. 11.2, Eleventh Circuit Pattern Jury Instructions. *See also*

*United States v. Croteau*, 819 F.3d 1293, 1305 (11th Cir. 2016) (discussing the elements of false claims under 18 U.S.C. § 287). The government need not prove the Defendant's motive, or that the Defendant intended to violate the law. *Id.* at 1306 ("The government was not required to prove motive—it was simply required to prove knowledge of falsity . . . The government also was not required to prove that [the defendant] acted with specific intent to violate the law or with specific intent to commit a crime to prove violations of § 287."). But "knowledge of falsity" is dispositive. *See id.* The Defendant knew the returns he filed with the IRS, an agency of the United States, were false. The entities earned no income to be taxed. Bank accounts for the entities that received refunds were not even opened until after the refunds were issued. The Defendant admitted to the IRS that none of the entities for which the returns were filed had any business activities. Likewise, the Defendant knew that the trusts had not paid the IRS any money, and thus he knew that his claims that they had paid over withholdings or otherwise paid the IRS were false. The Defendant knew the trusts were not owed any refunds. Indeed, the volume, magnitude, and type of claims on the returns filed by the Defendant make clear the returns' falsity. The Defendant knew he did not earn $550 million in income from twelve different trusts and that the IRS did not owe him $165 million.

### C. Count Twenty: Theft of Government Funds

The theft of government funds statute, 18 U.S.C. § 641, provides:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof . . . shall be fined under this title or imprisoned not more than ten years, or both . . ..

The elements of that offense are that: (1) the money or property described in the indictment belonged to the United States; (2) the Defendant stole or knowingly converted the money or

property to his own use or to someone else's use; (3) the Defendant knowingly and willfully intended to deprive the United States of the use or benefit of the money or property; and (4) the money or property had a value greater than $1,000.  Offense Instruction No. 21, Eleventh Circuit Pattern Jury Instructions.  The term "willfully" in this context requires the government prove the Defendant acted "voluntarily and purposely, with the intent to do something the law forbids." *See id.*  It does not require the government prove the Defendant knew what specific law he was violating.  *See id.  See also Bryan v. United States*, 524 U.S. 184, 184 (1998) (holding the term "willfully" in 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D) only required proof the Defendant knew his conduct was illegal, not that he knew the particular statute making it so); *United States v. Wenxia Man*, 891 F.3d 1253, 1268 (11th Cir. 2018) (discussing *Bryan* and its progeny).  Plainly, the Defendant attempted to steal approximately $165 million from the IRS and succeeded in stealing $5 million.  Count Twenty relates to the two false refunds that the Defendant caused to be issued to solely the Burgess Mattox Bey Investment Trust, totaling approximately $2,897,192.74. He used that money for personal expenses, including a new home, luxury vehicle, and furniture. The Defendant knew he was not entitled to the refunds issued to him, converted those funds to his use, and deprived the United States of those funds.

## POTENTIAL LEGAL ISSUES

### I.   <u>The Indictment</u>

#### A.  Scrivener's Error

The indictment, in Count Fourteen, alleges in chart form that the Defendant falsely claimed $600,000 in federal income tax withholdings on the tax return filed for Burgess Mattox Bey Trust on September 22, 2017, for the 2016 tax year.  (Indictment ¶ 8.)  This was an error in drafting the indictment, or a "scrivener's error."  The Defendant falsely claimed $600,000 as "estimated tax payments and amount applied from 2015 return," which is a category of payment to the IRS near

the line for federal income tax withholding on the tax return.  Withholding is another form of "payment" to the IRS, and as such, to reduce confusion, the government intends to refer primarily to "payments to the IRS" where needed to include both withholding and other payments. The jury may disregard the "scrivener's error" and nevertheless find the Defendant guilty of Count Fourteen.  Doing so would not constructively amend the indictment.  *See United States v. Baldwin*, 774 F.3d 711, 724 (11th Cir. 2014) ("A constructive amendment of an indictment 'occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment.'" (quoting *United States v. Keller*, 916 F.2d 628, 634 (11th Cir.1990)).  Nor does the error prejudice the Defendant.  *See generally United States v. Wall*, 285 Fed. App'x 675, 684 (11th Cir. 2008) (noting the defendants "were not prejudiced by the scrivener's error, and absent prejudice, a scrivener's error in the indictment is not grounds for reversal").  The return is still false on multiple fronts.  Burgess Mattox Bey Trust never made any *payments* to the IRS, withholding or otherwise.  Moreover, as alleged in the indictment, the return falsely claimed $250,000 in income and a tax refund in the amount of $500,000. To that end, the Government intends to request a jury charge to address findings on Count 14.

### B.  Redactions to Forfeiture Notice

On July 9, 2021, the government filed a Motion to Strike Certain Property Listed in the Forfeiture Notice of the Indictment.  (ECF No. 45.)  Specifically, the government moved to strike the listing of the Defendant's real property at 1054 Morgan Garner Drive, Lilburn, Georgia.  (*Id.* at 1–2.)  The Court has expressed its intent to dispose of the government's motion after considering any further objections by the Defendant.  (ECF No. 51, Order at 3.)  The government maintains its request to strike the identified property from the indictment's notice of forfeiture and asks the Court to rule on its motion prior to jury selection.

**II.** **Exemption to Sequestration of Witnesses**

The government requests IRS Special Agent Jeron Clark and U.S. Treasury Inspector General for Tax Administration (TIGTA) Special Agent Michael Barutio be permitted to remain in the courtroom during the presentation of evidence. As of the date of this filing, the government intends to call only Special Agent Jeron Clark to testify in its case-in-chief. It may, however, call Special Agent Michael Barutio to rebut any case put on by the Defendant. Normally, "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." FED. R. EVID. 615. The Court may also exclude a witness on its own. *Id.* There is an exception, however, for an "officer or employee of a party that is not a natural person, after being designated as the party's representative," FED. R. EVID. 615(b), and "person[s] whose presence a party shows to be essential to presenting the party's claim or defense," FED. R. EVID. 615(c). The Advisory Committee Notes for Rule 615 acknowledge "[m]any district courts permit government counsel to have an investigative agent at counsel table throughout the trial" and the "investigative agent's presence may be extremely important to government counsel, especially when the case is complex." "The agent, too, having lived with the case for a long time, may be able to assist in meeting trial surprises where the best-prepared counsel would otherwise have difficulty." FED. R. EVID. 615 cmt. Such is the case for both agents. Though the Advisory Committee Notes suggest investigative agents are best exempted from Rule 615 under subsection (b), both agents' presence is essential to presentation of the government's case as well. They both had substantial involvement in the investigation of the Defendant, including an interview of the Defendant at which he made the previously discussed admissions. Both agents would assist the government in directing its case-in-chief and rebutting any case the Defendant may put on. Rule 615 does not necessarily limit the number of investigative agents that may assist the government

during trial. *Cf. United States v. Ratfield*, 342 Fed. App'x 510, 512–13 (11th Cir. 2009) (finding the district court did abuse its discretion in exempting two IRS agents from the sequestration rule).

## III.   <u>Statements by Defendant in Court</u>

The Court has ruled the Defendant is precluded from making certain statements and arguments at trial. (ECF No. 51, Order at 4–6). As this Court has noted, (ECF No. 22, Minute Entry for 10/23/2020 hearing) the Defendant, though pro se, is bound by the same rules of evidence and procedure as attorneys. *United States v. Ly*, 646 F.3d 1307, 1315 (11th Cir. 2011) ("[A] pro se defendant must follow the rules of procedure and evidence . . .." (citing *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975))). It is appropriate to instruct the jury that the Defendant's statements, outside any testimony he may give, are not evidence. *See United States v. Stanley*, 891 F.3d 735, 739–40 (8th Cir. 2018) (finding the district court did not err by instructing the jury that it could only consider the defendant's testimony as evidence, not statements made by him when acting as his own attorney). Should the Defendant testify, he may do so in narrative form. *Ly*, 646 F.3d at 1309, 1312–13 (reversing conviction because defendant misunderstood his right to testify) ("[The defendant] believed he could testify on direct examination only if he was being questioned by an attorney; he was clearly ignorant of his ability to provide narrative testimony"; "A pro se criminal defendant may testify in narrative form; he does not require an attorney's assistance." (citing *United States v. Moody*, 977 F.2d 1425, 1430 (11th Cir. 1992))). *See also United States v. Anderson*, 1 F.4th 1244, 1255 (11th Cir. 2021) (discussing *Ly* positively and emphasizing that the court "generally should not probe a defendant's reasoning as to whether or not to testify . . ."). So that the government may effectively object to any testimony by the Defendant, and so that the Court may effectively enforce its rulings during such testimony, the government suggests the

Defendant: prior to any testimony, proffer any topics on which he intends to testify; and/or during such testimony, announce a certain topic before he begins to testify on it.

## IV.   **Intent and Good Faith**

The government recognizes the Defendant may be able to assert a good-faith defense or lack of requisite intent. *See generally Croteau*, 819 F.3d at 1307 (questioning whether good faith is a defense to false claims against the government but noting the offense still requires "knowledge of falsity"); *United States v. Morris*, 20 F.3d 1111, 1114–15 (11th Cir.1994) ("[S]pecific intent may be negated by a good-faith misunderstanding of the law or a good-faith belief that one is not violating the law, regardless of whether or not the belief is reasonable." (citing *Cheek v. United States*, 498 U.S. 192, 202 (1991))).  The Defendant is "entitled to wide latitude" in trying to show lack of intent, *see United States v. Lankford*, 955 F.2d 1545, 1150 (11th Cir. 1992), and the jury may consider evidence from any source showing he acted in good faith and did not willfully violate the law, *see Cheek*, 498 U.S. at 202.

With that said, the evidence must still be admissible.  *Cf. id.*  For evidence relating to willfulness to be admissible, the Defendant must first lay a proper foundation which demonstrates that actual reliance during the commission of the crime.  *United States v. Graham,* 981 F.3d 1254, 1261–63 (11th Cir. 2020); *United States v. Marston*, 517 F.3d 996, 1003 (8th Cir. 2008); *United States v. Harris*, 942 F.2d 1125, 1132 n.6 (7th Cir. 1991).  Without actual reliance by the Defendant, it is not admissible. *Marston*, 517 F.3d at 1003; *see also United States v. Powell*, 955 F.2d 1206, 1214 (9th Cir. 1991) ("[M]aterials upon which the defendant does not claim to have relied, however, can be excluded as irrelevant . . ..").  Further, the defendant has not submitted any reciprocal discovery to date, nor has he provided exhibits in accordance with the court's deadline of August 9, 2021 to the government's knowledge. To the extent the defendant attempts to

16

introduce evidence at trial previously undisclosed to the government, the government reserves its right to object under the Rules of Criminal Procedure or the Rules of Evidence.

The Court previously precluded the Defendant from introducing certain evidence, making certain statements, and asserting certain defenses at trial.  (ECF No. 51, Order at 4–6.)  With that said, the Court's Order does not preclude the Defendant from asserting a good-faith defense or arguing that he lacked the requisite intent for any of the offenses charged.  Assuming the proper foundation is laid, the government will not object to testimony by the Defendant that he acquired a misunderstanding of the law based on a particular oral or written statement about the law, that the misunderstanding is directly connected to the charge offenses, and that the Defendant relied upon that misunderstanding when he committed the charged offenses. Such evidence, however, should be admitted solely as to the Defendant's state of mind and should be disregarded as a statement of law since it is an incorrect statement of law. *See generally, e.g, United States v. Ratfield*, 342 Fed. App'x 510, 515–16 (11th Cir. 2009).  The Government will request an appropriate limiting instruction and jury instruction regarding the law.  Pursuant to FED. R. EVID. 403, the government may request that cumulative evidence regarding any good faith defense be excluded.

## V.    Other Acts by and Concerning the Defendant

On August 2, 2021, the government filed a Notice of Intent Pursuant to FED. R. EVID. 404(b), detailing certain evidence it intends to introduce at trial: the IRS assessed the Defendant civil penalties for "frivolous returns" filed as part of his scheme; the Defendant made a payment to the IRS for his personal tax debt with money he obtained from the scheme; the Defendant has not filed individual income tax returns since 2003, regardless of filing requirements; the Defendant filed twenty-two more fraudulent tax returns (identified above) than are charged in the indictment.

(ECF No. 49, Notice of Intent.)   For the same reasons as in the government's Notice, the government does not concede any of the previously identified evidence is subject to Rule 404(b) and argues that even if it is, it would be admissible under the same rule.

## VI.   Summary and Demonstrative Exhibits

The government intends to introduce into evidence a summary chart of the Defendant's fraudulent tax returns as well as IRS data relevant thereto, including IP addresses associated with the electronically filed returns, total withholdings and payments received by the IRS, and any refunds issued, currently marked as Exhibit 4-1.  The government also intends to present the jury with, but not introduce into evidence, several demonstrative exhibits, including a derivative of the aforementioned summary chart (Exh. 4-2), a chart detailing deposits into the trusts' bank accounts (Exh. 15-1), and a chart detailing the proceeds of his scheme (Exh. 15-2).

Summary charts are admissible to "prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  FED. R. EVID. 1006.  Given the volume of IRS records[3] to be admitted, which include tax returns, tax transcripts, withholdings and payment data, and more, the summary chart will aid the jury in efficiently and effectively evaluating the many tax returns filed by the Defendant.  *See generally United States v. Gold*, 743 F.2d 800, 816 (11th Cir. 1984) (upholding admission of summary exhibits containing information derived from "other exhibits received into evidence or from oral testimony").  The government's summary chart will be supported by IRS records the government intends to introduce into evidence as well as testimony from an IRS witness.  *See United States v. Osborne*, 677 Fed. App'x 648, 656 (11th Cir. 2017) (noting that whether to admit a summary chart into evidence is within the discretion of the trial court and that even summary charts containing assumptions by the

---

[3] Currently estimated in the multiple hundreds of pages of certified IRS records.

government are permissible "so long as they are supported by the record, the supporting evidence has been presented to the jury, and the court informs the jury that it has the responsibility to decide what weight to give the summaries" (citing *United States v. Richardson*, 233 F.3d 1285, 1293–94 (11th Cir. 2000)).

Demonstrative exhibits or visual aids, unlike summary charts, are not evidence.  *See United States v. Ollison*, 555 F.3d 152, 162 (5th Cir. 2009) ("If a summary or chart is introduced solely as a pedagogical device, the court should instruct the jury that the chart or summary is not to be considered as evidence, but only as an aid in evaluating evidence.")  They may be used to effectively communicate a party's evidence.  *See id.*  ("[A]llowing the use of charts as 'pedagogical' devices intended to present the government's version of the case is within the bounds of the trial court's discretion to control the presentation of evidence under [Federal Rule of Evidence] 611(a).").  That is how the government intends to use the described demonstratives. The demonstratives will aid the jury in, among other things, evaluating the scope of the Defendant's conduct, the timing of events relevant to his intent, and the nature of his proceeds. The government does not seek to admit the demonstratives into evidence or provide them to the jury for deliberation.

## VII.   Redactions to IRS Transcripts

Pursuant to the Court's exclusion of evidence relating to the IRS's seizure of real and personal property in civil proceedings against the Defendant, the government intends to admit redacted versions of some of the previously discussed IRS account transcripts into evidence.  (*See* ECF No. 41, Transcript for 6/3/21 Hearing at 24.)  These redacted account transcripts are included in the government's trial exhibits binder.  The account transcripts for Burgess Mattox Bey Investment Trust (tax year 2015) and Marshana El Investment Trust (tax year 2016), in their

unredacted form, reference the excluded proceedings.  Unredacted versions of the transcripts have been provided to the Defendant previously (Bates numbers USAO_0257513 through USAO_027514; USAO_027568 through USAO-027569), and the government will make the same available to the Court for examination upon request.

## CONCLUSION

The foregoing details the facts underlying this case, the government's expected evidence at trial, and issues that may arise at trial.  If any issues arise that have not been addressed herein, the government requests leave to file supplemental briefing.

PETER D. LEARY
ACTING UNITED STATES ATTORNEY

By:     /s/ Jessica A. Kraft
JESSICA A. KRAFT
Trial Attorney
Michigan Bar No. P80841
U.S. Department of Justice, Tax Division
150 M Street NE, #1.1505
Washington, D.C.  20002
Telephone:  202-514-7670
Fax: 202-514-0961
Email:  Jessica.A.Kraft@usdoj.gov

LYNDIE M. FREEMAN
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 119499
United States Attorney's Office
Middle District of Georgia
Post Office Box 1702
Macon, Georgia 31202
Telephone: (478) 752-3511
Email: lyndie.freeman@usdoj.gov

*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I, JESSICA KRAFT, Trial Attorney, hereby certify that on the 9th day of August, 2021, I filed the

within and foregoing **Government's Trial Brief** with the Clerk of the Court using the CM/ECF

system which will send notification of such filing to all parties of record and that I caused the

mailing of a true and correct copy of the same, with proper postage affixed thereon to as follows:

Marquet Mattox
Butts County Detention Center
835 Ernest Biles Drive
Jackson, GA 30233

> PETER D. LEARY
> ACTING UNITED STATES ATTORNEY
>
> BY: _/s/ Jessica A. Kraft_
> JESSICA A. KRAFT
> Trial Attorney
> Michigan Bar No. P80841
> U.S. Department of Justice, Tax Division
> 150 M Street NE, #1.1505
> Washington, D.C.  20002
> Telephone:  202-514-7670
> Fax: 202-514-0961
> Email:  Jessica.A.Kraft@usdoj.gov
>
> _Attorney for the United States of America_